## CLARK ET AL. VS. BALES.

The defendant will be made liable for trespass, if it is proved that he came in aid of the person, who committed it, though he took no further part in it; and where there are circumstances in proof, connecting a defendant with the trespass, and the jury find a verdict against him, and the judge, who heard the testimony, refuse to grant a new trial, this court will not disturb the verdict.

When a joint trespass is proved, the jury are to estimate the damages against all the defendants, according to the amount which they think the most culpable of the defendants ought to pay : and where the trespass is an aggravated one, they are not confined to the actual damage, but may give exemplary damages.

*Quere* : Will the affidavit of a juror, after verdict rendered, that he was induced to consent to the verdict from a misapprehension of the instruction of the court, be admitted as cause for a new trial ?

*Writ of Error to the Circuit Court of Independence County.*

Hon. B. H. NEELY, Circuit Judge.

FAIRCHILD, for the plaintiff.

W. BYRES, contra.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

Henry Bales brought an action of trespass, in the Independence Circuit Court, against Johnson Clark, John Clark, Sarah Clark, Jonathan Clark and Robert A. Patterson, alleging, in the declaration, in substance, as follows :

1st. Count: That, on the 20th December, 1851, the defendants broke, and entered the close of the plaintiff, and drove away, and converted to their own use, a sow and nine shoats, of the value of $ 200, the property of the plaintiff.

2d. Count, for breaking and entering the close of the plaintiff, pulling down his fence, and carrying away his rails.

3d. Count: That the defendants seized, took, and drove away, the hogs of the plaintiff, to wit: one sow, and nine shoats, of the value of $200.

The defendants pleaded not guilty, the case was submitted to a jury, and a verdict returned for the plaintiff, assessing his damages at $100.

The defendants moved for a new trial, on the grounds following:

1st. The damages assessed by the jury are excessive, and unwarranted by the evidence, and law of the case.

2d. The verdict is against the evidence, and, entirely without evidence, as to defendant, *Robert Patterson.*

3d. The verdict was given on a misapprehension of the law of the case, as declared in the affidavit of *James Carson*, one of the jurors.

4th. The verdict is against the law and evidence.

To support the motion for a new trial, the defendants filed the affidavit of Carson, one of the jurors, made before a justice of the peace, stating, that affiant misunderstood the charge of the court to the jury, in this: that he understood the judge to charge the jury, "that if they, by the law and testimony, find one of the defendants guilty of the charge alleged in the declaration, all must be so found, and damages awarded accordingly, as to the parties charged, and that the jury had no right, or power, under the instructions of the court, as understood by affiant, to discharge any one of the defendants, without discharging all of them—that he understood the court to charge, that if any one were guilty of the trespass, all were guilty, and that damages must be found against all, or all must be acquitted. That, under this misapprehension of said charge, as understood by affiant, he acquiesced in the verdict of the jury. That he now understands the charge of the court to have been, that the jury had the right, under the law, to discharge one or more of the defendants in said cause, provided

they believed the testimony, as to any one of the defendants, was deficient, and did not sustain the charge alleged as to him or them. That, under such an understanding of the law and charge of the court, he could not, under his oath, as a juror in said cause, have consented to the verdict rendered, and, under such state of facts, he makes this affidavit."

The court overruled the motion for a new trial; the defendants excepted, took a bill of exceptions setting out the evidence, and brought error.

The substance of the testimony, as it appears in the bill of exceptions, is as follows:

*Benjamin R. Henderson*, a witness for the plaintiff, testified that he lived in the neighborhood of the parties to the suit; that, in December, 1851, a short time before the commencement of the suit, he was at the house of plaintiff, who lived upon an improvement upon the public land, which he had bought and claimed —the improvement consisted of a log-house, field, a lot around a stable and corn crib, and a hog-pen in the yard. The plaintiff had a large spotted sow, which he bought a year before that time, of one Henderson. Witness knew the sow well, when Henderson owned her, and saw her frequently in the plaintiff's possession, after he bought her of Henderson; and after which, she had nine pigs, which, in December, 1851, were quite large shoats. Plaintiff, at that time, had had the sow up in a pen, fattening for his pork—the shoats were running about the yard, stable and crib. When witness went to plaintiff's house, as above stated, he was told that the sow had been let out of the pen, the night before, by some person, and that the *Clarks* had driven her, and a part of the shoats, off, that morning; and, while witness was there, *Jackson Clark*, and two or three of the sons of the defendant, Johnson Clark; and *Jonathan Clark* and *Robert A. Patterson*, came up to the plaintiff's house, and said they were going to drive off the balance of the shoats. Plaintiff told them not to do so—that they could not drive or take them away, without legal authority. *Jackson Clark* replied that he had authority

enough — that they were his mother's hogs (*Sarah Clark*, one of the defendants,) and that he would take them; and he, and *Jonathan Clark*, and the sons of Johnson Clark, commenced driving them off, against the order of plaintiff, and, to get them away, they had to run some of them into the hog-pen, and catch them; and that they drove them off, and took them to said Sarah Clark's. Witness did not not recollect of seeing *Robert A. Patterson* doing any thing particular about said hogs, only he come with the others, and went away with them. Before they could get the shoats away, they had to run them around in the yard and lot of plaintiff, &c.

Witness was at the house of plaintiff, some eight or ten days before this; and *Johnson Clark* and *John Clark*, two of the defendants, came there, and said the sow and shoats belonged to their mother, or the estate of James Clark, deceased — witness did not remember which, and that they would have them. Plaintiff told them they could not have them without legal authority; and they said they had authority enough. On the next day, after the hogs were taken, as aforesaid, plaintiff got the constable, and a writ to take the hogs, and the plaintiff, the constable, and witness and some others, went to Mrs. Sarah Clark's, one of the defendants, and mother of the defendants, *Johnson Clark*, *John Clark*, and *Janathan Clark*, and there found said sow and pigs in a pen. The defendants, *Johnson Clark*, *John Clark* and *Jonathan Clark*, were there. The constable and plaintiff demanded the hogs, and the said *Johnson* and *John* came out to the pen, and told the constable and the plaintiff not to take the hogs. The constable told them his writ commanded him take them; and *Johnson Clark* told him if he attempted to lay down the pen, and take the hogs, if he were to knock him in the head and kill him, he could not be hurt for it. The constable and the plaintiff did not take the hogs. Witness passed there on the next day and saw the hogs—they had all been killed. Did not see who killed them—they were killed and dressed, but witness knew

them. Witness thought the sow and shoats were worth about $20—were worth from $15 to $25.

*James W. Henderson*, witness for plaintiff, testified, that he was one of the executors of James Clark, deceased, the husband of Sarah Clark, and father of said *Johnson, John*, and *Jonathan Clark*; and that *Robert A. Patterson*, the other defendant, was a son-in-law of said *Johnson Clark*. That, at a sale of the personal property of said *James Clark*, deceased, by his executors, the sow in question was sold, as part of his estate, purchased, and paid for, by one *John P. Henderson*, who afterwards sold her to the plaintiff.

*Holland*, witness for plaintiff, was with the constable when he went to Mrs. Clark's to demand the hogs for the plaintiff, and as to what occurred there, at that time, testified substantially as the witness *Benjamin R. Henderson*. He also saw the hogs at *Mrs. Clark's*, after they were killed.

*Jackson Clark*, witness for the defendants, testified, that one of the hogs running out was not sold at the executor's sale; and that his mother *Sarah Clark*, claimed the sow and pigs which plaintiff had in possession, and asked witness to go and get them for her. She told Johnson Clark's children to help witness drive them to her house. *Johnson Clark* was not present, and witness never heard him give the children any directions about the matter. Early in the morning, *Sarah Clark*, witness, the children of *Johnson Clark*, and *Jonathan Clark*, went up to the plaintiff's house, which was about a quarter of a mile from the house of the mother of the witness, to get the said sow and shoats, and found them near the house, running out near the road. The plaintiff forbid their taking them, but Mrs. Clark said they were hers, and told witness to drive them home; and she, *Jonathan, Johnson's* children, and witness, attempted to drive them to Mrs. *Clark's*, and did drive the sow and a part of the shoats, but a part of the shoats they did not get that time; but *Jonathan, Robert A. Patterson*, and *Johnson's* children, returned to the plaintiff's, and witness, *Jonathan* and *Johnson's* boys, drove the balance of

them to Mrs. Clark's, said Robert A. Patterson returning with them. They put them all in a pen at Mrs. Clark's, and witness afterwards killed and dressed them for his mother, at her direction. Neither John nor Johnson Clark was present when the hogs were killed, nor had any thing to do with the killing of them. Neither of them was present when the hogs were taken from the plaintiff. They were both present, however, when the constable and plaintiff came to Mrs. Clark's after the hogs.

The counsel of the plaintiffs in error, has not claimed, in his brief, that the court below should have regarded, or granted a new trial upon the affidavit of the juror, Carson, stating that he agreed to the verdict under a misapprehension of the charge of the court. It need only be remarked, therefore, on this point, that we are inclined to place this affidavit with the class held to be inadmissible in *Pleasants vs. Heard*; and, even if allowed, the court below could best judge whether its charge was given in terms likely to mislead the juror, or whether the affidavit was not without just foundation. The charge of the court is not put upon the record, and we have no means of determining whether the juror could have mistaken it.

It is urged, by the counsel for the plaintiffs in error, that a new trial should have been granted, because there was no evidence to sustain the verdict, as against the defendant Patterson, and that the damages assessed were excessive.

The proof is clear that the hogs belonged to the plaintiff, that they were driven from his premises to Mrs. Clark's, and killed.

The defendants, John and Johnson Clark, were not present, it seems, when the hogs were driven off, nor when they were killed, but they were at Mrs. Clark's, when the plaintiff and constable went there for the hogs, and forbid their taking them from the pen. The defendant, Patterson, was the son-in-law of Johnson Clark, whose mother claimed the hogs. He went to the house of the plaintiff, it appears, with Jonathan Clark, and Johnson

Clark's children; was present when they were chasing a portion of the hogs about the premises, and returned with them to Mrs. Clark's, where they drove and penned the hogs.

The defendant will be made liable for a trespass, if it is proved that he came in aid of the person who committed it, though he took no further part in it. 3 *Phill. Ev.* 187.

It cannot be said that there was a total want of evidence to sustain the verdict as against any one of the defendants; and it was the peculiar province of the jury to pass upon the importance to be attached to the circumstances connecting each, and all of the defendants, with the trespass upon the property of the plaintiff, as detailed in evidence, in making up their verdict. Upon these circumstances they found all of the defendants guilty of a common cause; and the judge, who also heard the testimony of the witnesses, refused to set their verdict aside. We shall not, therefore, disturb it. See *Drennen vs. Brown*, 5 *Eng. R.* 138; *Bowen vs. Cook, ib.* 309; *Hubbard vs. State, ib.* 378; *Spratt et al. vs. Vaughan, &c., Ib.* 474; *State Bank vs. Wooddy et al., ib.* 638; *Bivens vs. State*, 6 *Eng. R.* 455; *Sparks vs. Beaver, ib.* 630; *Mains vs. State*, 13 *Ark. R.* 285; *Funkhouser and wife vs. Pogue, ib.* 295; *Hendrix vs. Sharp, ib.* 306.

Nor are we disposed to set aside the verdict on the grounds of excessive damages.

When a joint trespass is proved, the jury are to estimate the damages against all the defendants, according to the amount which they think the most culpable of the defendants ought to pay. 3 *Phill. Ev.*

The trespass in this case, was rather a flagrant one. The plaintiff's premises were invaded, his close broken, entered, his hogs driven off, killed and converted; and on the trial, the defendants proved no color of title to the property. True, the value of the hogs was proven not to exceed $25, but the jury were not confined exclusively to the value of the hogs, in determining the amount of damages to be awarded the plaintiff. They had the right to take into consideration the invasion of the plaintiff's

premises, the vexation to his feeling, the inconvenience to him arising from the deprivation of his property, as well as its value, and then to add something by way of "smart money," or exemplary damages.

Under all the circumstances of this case, we cannot conclude, that the verdict for one hundred dollars, was so exorbitant as to indicate corruption, or bad faith on the part of the jury, and shall not therefore, disturb it. See *Major vs. Pulliam*, 3 *Dana* 582; *Wort vs. Jenkins*, 14 *John R*. 352 ; 3 *Starkie Ev*. 1451. The judgment is affirmed.