## PATTON *v.* ALEXANDER.

4-6416  154 S. W. 2d 1

Opinion delivered June 23, 1941.

*Bon McCourtney* and *Claude B. Brinton*, for appellant.

*H. M. Cooley*, for appellee.

SMITH, J. J. L. Alexander purchased from the Patton Motor Company a truck, the price of which was $660, but with an air-blast horn, overload springs, battery, sales tax, and carrying charges, including interest and insurance, the final purchase price was $808.65. A note for $744.45 of this purchase price was given, secured by a title-retaining note on the truck and a chattel mortgage on certain personal property owned by Alexander.

The motor company carried a blanket fire insurance policy covering its interest in all trucks which it sold on

partial payments, which provided that in cases of total loss or damage by fire the insurer should pay either the market value of the truck at the time of the fire or the balance of purchase money unpaid at that time. This, or another policy written by the same company, also contained certain collision insurance, damages in either case being payable to the motor company as its interest appeared.

After buying the truck Alexander had a collision, and the agreed damage to the truck was $86.66. The policy contained a $50 deductible clause, so that the insurance company was required to pay only $36.66. The repair of the truck cost $86.66, and its value was not diminished materially by the collision after the repairs were made.

The truck was burned the latter part of February, 1939, and the testimony is in irreconcilable conflict as to the extent of the damage and the salvage value of the truck after the fire. Alexander was in default in his payments at the time of the fire, and the motor company had the right to repossess the truck on that account. Whether it did so—thereby converting the truck—is another disputed question of fact in the case.

We think the motor company did convert the truck, although it disclaimed that intention. The truck burned in Alexander's yard, and the motor company sent its representative to haul it into its garage. The testimony on Alexander's behalf was that this was done over his protest; while the testimony on behalf of the motor company was that this was done with Alexander's consent.

Alexander was sick at the time, and was carried to the hospital. He employed an attorney to represent him in the adjustment of the insurance, who reported to the motor company that he had received from the insurance company an offer of the truck in its damaged condition and $650 in cash in settlement of the claim; but it does not appear that this offer was made by anyone having authority to make it. The adjuster of the insurance company testified that he did not make or authorize any such offer; that he regarded the damage to the truck as total and settled with the motor company on that basis, by

paying $550 and keeping the truck. This evidently was upon the theory that having paid the market value of the truck the insurance company was subrogated to the rights of the motor company as owner. But, after making this settlement with the motor company, the insurance company sold the truck to the motor company for $70, and the motor company admitted reselling the truck at a small profit, the amount of which was not stated.

These transactions, made without consulting Alexander and without his knowledge or consent, constituted a conversion of the truck, and the motor company became liable for the value of the truck at the time and place of its conversion, less the balance of purchase price remaining unpaid. See recent case of *Barham* v. *Standridge*, 201 Ark. 1143, 148 S. W. 2d 648, and cases there cited.

The motor company filed suit against Alexander, in which the facts here recited were alleged, and the foreclosure of the chattel mortgage, covering certain mules and personal property, was prayed to enforce the payment of the $744.45 note. Certain credits were indorsed on the note, including payments made by Alexander and the $550 paid by the insurance company, leaving a balance secured by the chattel mortgage of $134.81.

Alexander filed an answer and cross-complaint, in which he alleged that Patton representing the motor company and the adjuster for the insurance company had colluded to defraud him out of his truck. He prayed judgment against the motor company for $401.85. The items comprising this total were: $36.66 insurance collected for collision; $100, the difference between the insurance paid and that offered to Alexander's attorney, and $400, salvage value of the truck. These items total $536.66. The $134.81, alleged to be the balance due on the $744.45 note, deducted from this total, leaves a difference of $401.85, for which last named amount Alexander prayed judgment.

The testimony is voluminous, and there is a sharp conflict in it upon every question of fact in the case, the principal question of fact being the salvage value of the truck.

The court dismissed the complaint as being without equity, and decreed the cancellation of the chattel mortgage upon Alexander's mules and other personal property, upon the theory that the debt which the mortgage secured had been discharged. The court also dismissed the cross-complaint as being without equity, and assessed the costs of the suit against the motor company, from which decree the motor company has appealed, and Alexander has prayed a cross-appeal.

It is somewhat anomalous that the conflicting demands exactly balance, and that neither party is indebted to the other in any amount. But it would be very difficult to find which party was indebted to the other, and in what amount, and we would feel no certainty in saying that any finding upon this question was contrary to the preponderance of the evidence. Any exact finding upon this question would require a finding as to the salvage value of the truck. Just what that finding by the court below was does not appear except inferentially, the inference being that it was in an amount which balanced the accounts between the parties, and we are unable to say that this finding does not do justice between the parties, or is contrary to the preponderance of the evidence.

The debt secured by the chattel mortgage having been satisfied, the court properly decreed the cancellation of the mortgage.

A motion to retax the costs was filed in the court below, and the costs were retaxed and reduced; but, even so, it is insisted that certain items of costs were improperly allowed. We are unable to pass upon this question, as there is no abstract of the testimony here upon that issue; indeed, the testimony upon that issue has not been incorporated in the record.

Being unable to say that the findings of the court below are contrary to the preponderance of the testimony, the decree must be affirmed on both the direct and cross-appeals, and it is so ordered.