RUTLEDGE *v.* UNIVERSAL C. I. T. CREDIT CORPORATION.

4-9400                                                237 S. W. 2d 469

Opinion delivered March 12, 1951.

Rehearing denied April 9, 1951.

*R. W. Tucker,* for appellant.

*Chas. F. Cole,* for appellee.

PAUL WARD, J.   C. D. Rutledge filed a suit in circuit court to recover damages from Universal C. I. T. Credit Corporation for the wrongful conversion of an automobile.   The material part of the complaint states: "That on or about July 10th, 1949, defendant, Universal C. I. T. Credit Corporation and its agents and employees unlawfully took possession of said automobile without any authority or right, and without the knowledge and consent of the plaintiff and converted the same to its own use''; the defendant entered a general denial.   At the close of the testimony the court sustained defendant's motion for an instructed verdict, from which plaintiff appeals.

The issue before the lower court was whether there was an unlawful conversion, and the only issue before

us is: was there sufficient evidence to make a jury question.

Rutledge bought a Lincoln automobile November 10, 1948, in the State of Georgia and (by his wife) signed a conditional sales contract which was accepted by the Universal C. I. T. Credit Corporation. After making six monthly payments he moved to Batesville, Arkansas, with the knowledge and consent of the Credit Corporation. He was behind with his payments and applied to the local credit office for re-financing, without success. Some days later Gid Massey, an employee of the local agent, found the car at a filling station and took the keys. Then he went to appellant's home which was just behind the filling station and there he had a conversation with appellant and his wife about the possession of the car. He told them he had been instructed to take it and would store it in a local garage and would cooperate with them if they could find a buyer. Appellant did not give his permission, but he did not object. Massey then drove the car to appellant's house where Mrs. Rutledge removed some personal effects from the car. Mrs. Rutledge looked after business affairs for appellant because he was afflicted.

The following are excerpts from Mrs. Rutledge's testimony:

"Q. At any time did you consent? A. He didn't ask for my consent he just told me he was taking it. Q. You didn't object to his taking the car? A. There was no way to object. Q. He didn't get it by any trick or through fraud? A. No he just came and told me he had taken it. Q. You didn't offer any objections? A. I couldn't object. He told me what he was doing."

The nephew of appellant testified that appellant and his wife told him (before the alleged conversion) that they were going to lose the car if they did not make the payments; that he took a boy to Rider's garage (where the car was stored by the Credit Corporation) to buy the car; he looked at it and seemed to like it and went to appellee's local office to see if he couldn't drive it and was told he could not because it was not insured,

but to come back later and an employee would go with him and drive him; but the boy bought another car that same afternoon and never went back to appellee's office. Appellant's brother testified that a man came up from Little Rock to look over the car and that he did so and that he started the motor and ran it; said he would buy it if it drove all right; he told the man the C. I. T. had charge and that he went to see the C. I. T. man and was told he could drive it for what was against it, and nothing was done about it.

The sales contract contained the following provision: "If Customer defaults on any obligation under this contract, or if the holder shall consider the indebtedness or the car insecure, the full balance shall without notice become due forthwith . . . Customer agrees in any such case to pay said amount at holder's election, to deliver the car to the holder, and the holder may, without notice or demand for performance or legal process, enter any premises where the car may be found, take possession of it . . . and retain all payments as compensation for use of the car while in Customer's possession. The car may be sold with or without notice, at private or public sale (at which the holder may purchase) with or without having the car at the sale; the proceeds less all expenses shall be credited on the amount payable hereunder; Customer shall pay any remaining balance forthwith as liquidated damages for the breach of this contract and shall receive any surplus."

The contract having been executed in the State of Georgia it must be construed according to the laws of that state. *Lawler* v. *Lawler,* 107 Ark. 70, 153 S. W. 1113; *Peppers* v. *Penn. Door & Sash Co.,* 171 Ark. 521, 285 S. W. 5; *Motors Securities Co.* v. *Duck,* 198 Ark. 647, 130 S. W. 2d 3. A provision such as the one set out above from the sales contract in this case was approved by the Court of Appeals of Georgia in the case of *Matthewson et al.* v. *Brigman Motors Co.,* 23 Ga. A. 304, 98 S. E. 98, and we quote the syllabus prepared by the Court.

"Where a vendor sells certain property, to be paid for in installments by the vendee, and enters into a writ-

ten contract with the vendee, retaining the title to the property, with a stipulation in the contract that, 'if any of the installments are not paid, the vendor shall have the right to take possession of said property without any legal process, and all payments made up to the time of default shall be applied as rental for said property and depreciation in value' the contract is one of conditional sale and not of lease . . .; but where the vendee defaults as to some of the payments, the vendor, as between himself and the vendee, nevertheless has the right, under the contract, so far as mere possession of the property is concerned, to remove it without any legal process."

The same rule also applies in Arkansas as was held in the case of *Ellis* v. *Smithers,* 206 Ark. 247, 174 S. W. 2d 568.

Thus it appears that appellee had a right to take possession of the automobile in this case without legal action just so long as it did not use any force, deception or fraud. Under the pleadings and the testimony in this case it is our opinion that there is no evidence to support a finding of a jury that appellee converted appellant's automobile.

No error appearing, the judgment of the lower court is affirmed.