KENSINGER ACCEPTANCE CORP. *v.* DAVIS.

5-468                                                  269 S. W. 2d 792

Opinion delivered July 5, 1954.

*Barber, Henry & Thurman,* for appellant.

*Herndon & Schoggen,* for appellee.

ROBINSON, J.   This is an appeal from a judgment for compensatory and punitive damages growing out of the

conversion or wrongful repossession of a Ford truck. October 27, 1951, appellee, W. R. Davis, purchased from Union Motor Co. of North Little Rock a Ford truck for the price of approximately $2,900. $600 was paid at the time of purchase and the balance was to be paid in one installment of $350 and the remainder in monthly installments of $106.54 each. The Union Motor Co. transferred the title-retaining contract to appellant, Kensinger Acceptance Corporation. Davis failed to make his August, 1952, payment in the sum of $106.54; and he testified that on September 11 he went to the finance company to explain that he could only make one payment at that time, whereupon the company agreed to accept the one payment and Davis paid it. Davis further testified that they entered into an agreement whereby the company would accept Davis' check for the September payment in the sum of $106.54 and hold it for ten days, Davis stating the check would be good at the expiration of that time.

Davis owned a second Ford truck on which he was also making payments, and on the same day gave a check for the sum of $213.08 on this truck which he said the finance company agreed to hold for two weeks. Six days later the second truck was wrecked. In attempting to adjust the insurance, Davis drove the first truck to the finance company's place of business. The finance company demanded that Davis pick up both checks. This he could not do, but said the $106.54 check was good at that time and would be paid if presented to the bank; or he offered to take it up by paying the cash. Davis could not adjust the matter with the finance company, and attempted to leave by driving the truck away, but found the truck keys had been removed. Employees of the finance company informed him they had removed the keys, had repossessed the truck, and told him he could not move it. Davis testified that he told them he had another key and that he was going to keep the truck, that he had lived up to his agreement and had the right to possession of the truck. He testified that he then attempted to insert the key in the lock, but was prevented from doing so by employees of the company; that one of them caught hold of his hand preventing him from unlocking the ignition

switch; and that the employees made threats to the effect that he could not move the truck without "taking some of their hide."

Thereupon Davis walked away and later filed this suit, alleging conversion and asking for compensatory and punitive damages. There was a trial to a jury and Davis was awarded $100 compensatory damages and $800 punitive damages.

On appeal the finance company contends there is "no competent evidence as to the value of the truck allegedly wrongfully repossessed," and that the court erred by giving to the jury appellee's Instruction No. 4 submitting the issue of punitive damages. Davis testified without objection that at the time of the conversion the truck had a value of $2,400 or $2,500, that he owed a little over $1,500 on it. Thus the evidence is sufficient to show that he was damaged in a sum much larger than the $100 compensatory damages awarded.

As to the punitive damages, the court was correct in submitting that issue to the jury. The evidence is sufficient to show that the finance company repossessed the truck by intimidation and by threats to use force. Although the witnesses who testified in behalf of the finance company denied that they actually took hold of Davis' hand, or by physical force prevented him from inserting the key in the lock and ignition switch, Mr. Tom Enochs, who was branch manager of the finance company at the time, testified that he went out to the truck and took possession of the key. He further testified: "Q. Who was with you? A. We went out about the same time. He started to get in on the driver's side and I took the key out and he told me 'I have another key' and I told him it didn't make any difference that the truck stayed there until he made the payment. He did pull out another key and was going to put it in the switch and I told him he wasn't going to take it off unless his payments were brought up to date. Q. Where was he at the time you told him that? A. Sitting under the steering wheel. Q. Where were you? A. I was on the left hand side. Q. On the ground or in the truck? A. I was on the left

hand side standing on the running board outside the truck. Q. Did you at any time touch Mr. Davis or threaten any bodily harm to him? A. No, sir. Q. You told him he couldn't drive it off? A. I told him he wasn't going to leave in the truck.'' This was at a time when Davis was sitting in the truck with the key in his hand. It was not shown just how Enochs was going to prevent Davis from leaving in the truck except through violence. The evidence justifies a finding that Enochs' statement was a threat of violence, was so intended by him and so understood by Davis.

To sustain its contention that punitive damages are not recoverable, appellant relies on the cases of *Franklin v. Spratt,* 174 Ark. 268, 295 S. W. 26, and *Barham v. Standridge,* 201 Ark. 1143, 148 S. W. 2d 648. We do not think either case controls here. In the *Franklin* case, there does not appear to have been an issue of punitive damages; and in the *Barham* case there was no element of violence or threatened violence.

This court has held there can be a recovery of punitive damages where there has been a wrongful taking of property. In *Clark* v. *Bales,* 15 Ark. 452, the court said: ''The trespass in this case, was rather a flagrant one. The plaintiff's premises were invaded, his close broken, entered, his hogs driven off, killed and converted; and on the trial, the defendants proved no color of title to the property. True, the value of the hogs was proven not to exceed $25, but the jury were not confined exclusively to the value of the hogs, in determining the amount of damages to be awarded the plaintiff. They had the right to take into consideration the invasion of the plaintiff's premises, the vexation to his feeling, the inconvenience to him arising from the deprivation of his property, as well as its value, and then to add something by way of 'smart money,' or exemplary damages.''

A note in 9 A. L. R. 1180 states the rule to be: ''By the great weight of authority it is held that where the buyer of property upon conditional sale makes default in his payments and by the terms of the agreement the seller is authorized in such event, to retake the property, he is

entitled under this power to repossess himself of the property if he can do so peaceably, but if the buyer objects and protests against the seller's retaking the property, and obstructs him in so doing, it is the duty of the seller to resort to legal process to enforce his rights to repossession. He is not entitled to use force, and he is guilty of an assault and battery or of trespass, as the case may be, if he does so." A large number of cases from numerous states supporting this rule are cited.

Affirmed.