Union Motor Company *v.* Tait.

5-560 . 276 S. W. 2d 690

Opinion delivered March 21, 1955.

[Rehearing denied April 18, 1955.]

*Barber, Henry & Thurman,* for appellant.

*Arthur Frankel* and *U. A. Gentry,* for appellee.

Griffin Smith, Chief Justice. Two judgments were rendered against Union Motor Company in favor of Mrs. J. O. Tait: one for $1,300, the other for $100. In appealing the Company urges errors in nine instances, each prejudicial.

Mrs. Tait, whose automobile and ring were the subject-matter of litigation, had lived at Sanford, Florida, but was employed at Orlando as a news announcer for a radio station. Her husband was inducted into the armed forces and in May, 1953, was stationed at Oceana, Virginia. In order to be near him while he awaited overseas

orders Mrs. Tait went to the Virginia city, taking with her a used Ford automobile she had purchased of Filley Motor Company at Orlando the preceding December. An old car was traded in and the title-retaining contract called for payment of 24 notes at $66.95, due monthly. Mrs. Tait came from Virginia to Little Rock to spend some time with her mother, who resides here.

During the late afternoon of October 30th the car was parked on Main street while Mrs. Tait and her mother went shopping. There is a qualified admission by Mrs. Tait that she was delinquent on two of her notes.

The qualified admission of delinquency relates to correspondence between Mrs. Tait and N. G. Filley. Mrs. Tait wrote from 2605 West Markham St. explaining that imperative car repairs would require a substantial cash outlay. She said that the bills would cause a heavy financial burden for several months, and asked that payment of the September note be deferred. Filley replied Sept. 23d, saying: "I have set up your next payment and was only too glad to do so. If any more is needed please feel free to request it. You do not need to send any receipts. Your word is confirmation enough for me."

When Mrs. Tait and her mother completed their shopping chores Mrs. Tait found that the car had been moved. Apprehending that some traffic law had been violated she inquired of a nearby policeman who informed her that a Union Motor Company wrecker had taken the car. She called the motor company and was told that a North Little Rock police official had authorized the removal. Specifically, Mrs. Tait was informed that the car had been taken on a "work order." The gist of this conversation is that a man named R. L. Taylor had requested that the car be picked up by Union Motors. Taylor represented the Filley Company.

Having failed to get satisfaction from Union Motors, Mrs. Tait employed legal aid, with temporary negative results. The car was locked and its windows closed when it was parked. A diamond wedding ring had been

left in the glove compartment, and there were other personal effects. Taylor talked by telephone with Mrs. Tait the evening of Oct. 30th and asked what he should do with her personal property. He later drove to the home of Mrs. Tait's mother, and there were other conversations, including an offer by Taylor to settle for $1,000 cash. Mrs. Tait asked how much time she could have to raise the money and Taylor replied that he was leaving the next morning at nine o'clock for Florida and would take the car. Mrs. Tait further testified that Taylor told her $1,000 was the amount Union Motors would pay for the car, against which there was a balance of $1,279. R. C. Davis, one of the owners of Union Motors, testified that after the dispute arose he declined to allow Taylor to take the automobile. He knew Taylor represented Filley Motor Co.

The complaint alleged that Union Motors "unlawfully, forcibly, and surreptitiously" took the car, which, with personal property appropriated, was worth $1,679.09. There was a prayer for $3,000 punitive damages, but this item passed out of the case without objection.[1]

The answer was general, each defendant "specifically denying each and every material allegation."

The attorney for appellant, in his opening statement, conceded that on the afternoon of October 30th a telephone call came to its service manager. The request was that a wrecker be sent to Main Street. The wrecker driver found Taylor at the place designated, with a policeman. Taylor pointed to the Tait car and said "this is the one we would like for you to pull in." At that time Union Motors did not know of appellee's interest. While the policeman directed traffic the wrecker was hooked on to the car.

---

[1] Kensigner Acceptance Corporation was named as a defendant, but the cause as to it was dismissed. Union Motors Company is a partnership, owned by R. C. Davis and W. G. Boone. For convenience the defendant is referred to in this opinion as Union Motors, or Union Motors Company.

Continuing with his opening statement the attorney said: "Admittedly the car was locked. It was in gear and the brakes were on, and the wrecker man could not pull a car in that condition; so someone did break the vent glass. When I say 'break' I mean [he made] a hole just large enough to put a wire through; but they did [do that]; they opened the vent glass and opened the door, and the car was taken directly to Union Motor Company."

There was the further explanation that a few minutes after the wrecker left J. C. Scruggs of Union Motors received a call from Mrs. Tait, and he told her the car was at the company's place of business. He also declined to surrender it. Likewise, when Taylor came in, Scruggs refused to let him take the car. The testimony quoted Taylor as having said: "Scruggs, this is my automobile. It doesn't belong to Mrs. Tait. She bought it from our company, and knowingly she is in default in her contract; she hasn't made payment." Counsel for Mrs. Tait objected on the ground that Filley was not a defendant. The suit, it was insisted, charged Union with conversion; but now, said the attorney, the company undertakes to justify its action on the ground it was acting for another. The court's ruling was that under the pleadings Filley Motor Company's interest was immaterial.

In objecting to the ruling defendant's counsel said that within three days from the time the car was taken plaintiff's attorneys were notified by letter that Union took the car for the Filley company; that it was holding the car as bailee and not in hostility to the plaintiff's title, hence it was proper to prove attending circumstances. In effect the request was that an amendment to the answer be permitted, or that the answer be treated as amended to correspond with the evidence.

To better understand the court's reason for rejecting the amendment it is necessary to refer to other procedural matters. The trial was Feb. 18, 1954, the complaint having been filed Nov. 3d, 1953. November 24

appellant's attorneys wrote counsel for appellee that "In the near future we are going to file an intervention on behalf of Filley Motor Company, and [when this is done] a copy will be forwarded to your office." January 5, 1954, appellant's counsel wrote: "We have heretofore intimated to you that we might file an intervention on behalf of Filley Motor Company. . . . After duly reviewing this file we see no basis for any such intervention, *and so far as we are concerned the case will proceed to trial on the basis of the pleadings.*"

Presumptively—an inference deducible from a statement by the court—Mrs. Tait had returned to Virginia and made the trip to Little Rock for the particular purpose of having the case tried. (The Judge spoke of "coming four or five hundred miles".)

*First—Court's Refusal to Permit Answer to be Amended.*—Instances are relatively few where an appellate court has predicated reversible error upon a refusal by the trial court to permit pleadings to be amended after trial has begun over objections of the adverse party. The discretion to overrule such motions must of necessity rest with the tribunal of first address, and this determination is not interfered with unless an abuse of authority is clearly shown in circumstances where the ends of justice would be defeated. *Bridgman* v. *Drilling,* 218 Ark. 772, 238 S. W. 2d 645.

In the case at bar appellee's counsel had a right to rely on the letter of January 5th containing an assurance that trial would proceed on the issues then joined. Filley Motor Company was not a party, nor were its rights suggested. But, says appellant, opposing counsel had information respecting the Florida corporation's interest in the transaction, therefore surprise must be eliminated. True it is that inter-party contacts, relationships, and conversations were such as to suggest a possibility that Union would undertake to justify its action by an affirmative defense in the nature of justification. On the other hand appellee had a right to assume that Filley had concluded not to run the risk of entering its appear-

ance in this jurisdiction, electing to chance the result on Union's ability to skirt the danger. At the time it made the choice there was a demand for $3,000 as punitive damages. In any event Filley collaborated with Union in making the choice of non-entry and is bound by that decision.

*Second—Could Appellant Show the Special Capacity in Which it Acted?*—Appellant pleads the scope of its rights under the general denial, Ark. Stat's § 27-1121, citing 65 Corpus Juris, p. 94, § 158 (b), and § 161; (c), p. 96. This plea, says the text writer, puts in issue plaintiff's ownership of the property and right to possession, and permits the defendant to introduce any competent evidence which will overcome such allegations. . . . Thus, defendant may show that the property was not received by him; and, although he took the property, the taking was with the plaintiff's consent and in pursuance of an agreement with the parties, and that he had a valid excuse for failure to deliver the property on demand, "thereby repelling any inference of conversion deducible therefrom, [and] that the taking was not wrongful, but by authority of law." See, also, 53 American Jurisprudence, p. 938, § 169. But a contrary result is shown by the Corpus Juris citation (§ 157-a), the statement being that "A general denial puts in issue only the facts alleged in the complaint."

The holding in *Barnett Bros. Merc. Co. v. Jarrett,* 133 Ark. 173, 202 S. W. 474, is that "Where the taking and appropriation of [personal property] by a third person was in disregard of the rights of the mortgagee the cause of action arises as for conversion. [But] if appellee held the property merely as bailee of the mortgagor, *and not in hostility to the rights of the mortgagee,* this may be proved as a defense to the action upon denial of the charge of wrongful taking and conversion." *Bethel v. Giebel,* 101 Mont. 410, 55 Pac. 2d 1287, 104 ALR 1150, is cited by appellant with the comment that "Following the Bethel decision, and in the annotations, cases are quoted from twelve separate jurisdictions, all upholding the rule

that in actions of trover or conversion a defendant may show under a general denial a special title or right of possession—as, for instance, by way of lien."

In determining whether Union had a right to show that it acted as agent for Filley and that in taking physical possession of the car it became—as appellant expresses it—a special bailee, we must consider the circumstances of appropriation. Assuming, for the purpose of this opinion, all that appellant claims and testing the trial court's action in directing a verdict under the rule that this course was improper if there had been substantial evidence to sustain the defendant's position, we have this situation:

Many of our decisions, citing applicable statutes, hold that a seller who has retained title to a chattel may, upon default in payment, retake the property and thereby cancel the debt; or he may sue to recover the debt and thus affirm the sale and waive the reservation of title. But, while with delivery no property absolute passes to the vendee until performance of the condition as to payment, "Nevertheless the buyer acquires a defeasible interest in the property." *National Bank of Arkansas* v. *Interstate Packing Co.*, 175 Ark. 341, 299 S. W. 34.

While many of our opinions employ the word "retake" in an extremely liberal manner, an examination of some of them discloses that the writ of replevy had been employed. In others the contract provided that if default occurred the seller could take the property wherever found; and we have held that this may be done without court process, provided the method employed is peaceable. *Ellis* v. *Smithers*, 206 Ark. 247, 174 S. W. 2d 568.

An example of peaceable repossession or "taking" is *Rutledge* v. *Universal C. I. T. Corporation*, 218 Ark. 510, 237 S. W. 2d 469. The contract authorized the seller to take possession "without any legal process" in the event of default. The evidence was conclusive that force was not employed. On the contrary every reasonable inference pointed to the appellant's acquiescence. In

affirming a directed verdict for C. I. T. we said: "Thus it appears that [the credit corporation] had a right to take possession of the automobile . . . without legal action, just so long as it did not use any force, deception, or fraud."

To the same effect is *Commercial Credit Co., Inc.,* v. *Ragland,* 189 Ark. 349, 72 S. W. 2d 226. The contract of sale, with deferred payments, contained language intended to vest in the seller—in case of the buyer's failure to make prompt payment of the installments—a right to retake the car, "wherever found, without notice or demand on the purchaser, and to sell it publicly or privately," etc. Ragland, the conditional purchaser, defaulted on a note due Dec. 2d. The latter part of that month a representative of the credit company went to Ragland's place of business in Stuttgart to collect, and declined to accept a personal check because another had been turned down by the bank. While discussions regarding payment were continuing the agent went to the car, presumptively in Ragland's presence, and removed the ignition key. Shortly thereafter Ragland sent his check directly to the credit company. It was accepted and paid. Demand was made for return of the key, but without avail. A mechanic suggested to Ragland that he "wire around" the lock, and explained how this could be done.

On February 5th the credit company received Ragland's check covering the payment due January 2d. Again there was a demand for return of the key, and refusal. Thereupon Ragland declined to make further payments. He left the car with the agency from which it was purchased, C. D. Conrey Company, to have it repaired. These repairs were necessitated, according to substantial testimony, because Ragland was forced to wire around the ignition lock.

With refusal by Ragland to make further payments until the key was returned, the credit company directed Conrey to deliver the property to it in Little Rock, and this was done. Ragland then sued the two corporations

for the value of the car, conversion being alleged. It was sold for $215. From a judgment in Ragland's favor for $223.45 Commercial appealed, and lost.

In discussing the appellant's conduct the opinion (written by Mr. Justice FRANK G. SMITH) says: "Having extended indulgence, which it was not required to do, by accepting the delayed payments, the credit company should, before taking possession of the truck, have advised Ragland that the practice would no longer be continued. . . . There appears to be no question—at least the jury was warranted in so finding—that the credit company took the key for the purpose of preventing appellee having the use of the car. We conclude therefore that the jury was warranted in finding that the conversion was wrongful. . . ."

The same broad principle was affirmed in *Patton* v. *Alexander,* 202 Ark. 883, 154 S. W. 2d 1. Patton, a dealer, had sold a truck to Alexander, retaining title and allowing deferred payments. The seller carried a blanket fire insurance policy covering its interest. The truck was partially destroyed by fire. "Alexander was in default with his payments at the time of the fire," says the opinion, "and the motor company had the right to repossess the truck on that account. Whether it did so—thereby converting the truck—is another disputed question of fact. . . . The truck burned in Alexander's yard and the motor company sent its representative to haul it into its garage. The testimony on Alexander's behalf was that this was done over his protest," but this was denied.

The insurance company paid Patton, and the adjuster testified that fire damage was total and that his company had settled with Patton on that basis. But after satisfying Patton the insurance company sold the salvage to the motor company for $70, and it in turn sold the property at a profit.

Our decision was that "These transactions, made without consulting Alexander and without his knowledge or consent, constituted a conversion of the truck, and the

motor company became liable. . . ." (See *Barham* v. *Standridge*, 201 Ark. 1143, 148 S. W. 2d 648, citing *Franklin* v. *Spratt,* 174 Ark. 268, 295 S. W. 26.)

In a case where there was evidence that a finance company holding default paper wrongfully took the car key, a judgment for punitive damage was affirmed, as was also an award to compensate. *Kinsinger Acceptance Corporation* v. *Davis*, 223 Ark. 942, 269 S. W. 2d 792.

While the evidence is undisputed that Mrs. Tait wrote Filley and that he assured her the September payment would be carried,—and further, that she might reasonably expect additional indulgence—the trial court's ruling restricted scope of the examination to the immediate conduct of Union Motors. In the light of assurances given before the trial began we do not think this was error—a conclusion that carries with it a disposal of appellant's contention that the court erred in not permitting Mrs. Tait to be cross-examined regarding statements she had made in a discovery deposition.

It is admitted, with commendable candor, that the car was broken into. Filley had written Mrs. Tait at her mother's Little Rock address, and therefore knew where she was, or could easily have ascertained. We think the conversion occurred when Union adopted unlawful means in acquiring possession of the car. Public policy does not countenance such a course.

It is urged that evidence respecting value of the car and ring is wanting, but the contention cannot be sustained.

Affirmed.

Mr. Justice GEORGE ROSE SMITH and Mr. Justice WARD dissent.

WARD, J., dissenting. The majority opinion in this case in effect finds: (a) That there is some question about appellee being behind in her payments when Taylor, agent for the Filley Motor Company, took possession of the car; (b) That under the general denial filed by

appellant it had a right to introduce evidence to show that the Filley Motor Company repossessed the car under the terms of the Conditional Sales Contract, and; (c) That such a defense was not good because force was used or a trespass was committed when the car was taken by appellant. In reply to these findings I make these comments: (a) In my opinion the testimony clearly shows that appellee was behind two months in her payments. However it is immaterial as to what the testimony shows in this connection because this is a fact situation which can be developed along with other matters of defense upon a remand; (b) I am in thorough agreement with this finding, and ; (c) I am not in agreement with this finding by the majority, and my reasons are hereinafter set out.

1. *Applicable Law.* It is conceded that the Conditional Sales Contract in this case was executed in Florida. Therefore the rights of the Filley Motor Company under said Conditional Sales Contract is governed by the law of Florida. This court has heretofore decided this exact point in the case of *Rutledge* v. *Universal C. I. T. Credit Corporation,* 218 Ark. 510, 237 S. W. 2d 469. In that case the Conditional Sales Contract was executed in Georgia and this court said: "A contract having been executed in the State of Georgia it must be construed according to the laws of that state."

2. *The Florida Law.* The Supreme Court of Florida has clearly passed upon the question presented here in several cases, one of which is *C. I. T. Corporation* v. *Reeves,* 112 Fla. 424, 150 So. 638. The court there, in referring to a Conditional Sales Contract, stated:

"The provisions of the contract above referred to were in contemplation of law a complete legal justification for the holder of the contract, provided he committed no trespass or assault in doing so, to retake possession of the motor vehicle covered by it, upon default of the buyer, and in so doing the holder was not required to serve any notice or make any demand on the buyer personally as a condition precedent to retaking possession,

since the contract in terms provided that the holder of it might, without any previous notice or demand for performance, and without legal process, enter any premises where said chattel might be found, and take possession thereof, after which it was further agreed that the holder, after so retaking possession, could make such disposition of the property retaken, as it might see fit.''

3. *Trespass or Assault.* Did Appellant commit a trespass or assault in taking the car in this case? In my opinion (a) no assault or trespass was committed and (b) it is immaterial.

(a) In this instance all appellant did was to break a glass in the door of the automobile in order to get it out of gear. This of course was not an assault upon the person of appellee. Since, under the law of Florida, appellant [as agent] had a right to take and keep the automobile, it naturally follows that it had a right to do anything it pleased to the automobile. What was done in this case by appellant is unlike cases where this court has said that the holder of a Conditional Sales Contract has no right to repossess a car if force is used against the person of the owner, as in *Kensinger Acceptance Corporation* v. *Davis,* 223 Ark. 942, 269 S. W. 2d 792.

(b) Conceding for the sake of argument that appellant did commit a trespass or assault in repossessing the car in question, it did not, under the law of Florida, affect the merits of this case. In the case cited above this very question was considered and the court said:

''But damages for such trespass and assaults, if any, are excluded from consideration on the trial of an action involving solely the question of the right of possession under the contract, after possession has been peaceably retaken and is being held by the defendant, as was the case here.''

Obviously, by the expression ''peaceably retaken,'' the court meant that the car was taken without using force on the owner, otherwise the quotation copied above means nothing.

For the reasons above mentioned the cause should have been remanded for a trial on the merits.