Cathy A. WILLIAMS, Appellant,

v.

FORD MOTOR CREDIT COMPANY, Appellee.

S & S Recovery, Inc.

FORD MOTOR CREDIT COMPANY, Appellant,

Cathy A. Williams

v.

S & S RECOVERY, INC., Appellee.

Nos. 81–1391, 81–1431.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1981.

Decided March 31, 1982.

---

Rex M. Terry, Bradley D. Jesson, Hardin, Jesson & Dawson, Fort Smith, Ark., for S & S Recovery, Inc.

Fines F. Batchelor, Jr., Van Buren, Ark., for Cathy A. Williams.

W. R. Nixon, Jr., Little Rock, Ark., for Ford Motor Credit Co.

Before HEANEY and McMILLIAN, Circuit Judges, and BENSON *, Chief District Judge.

BENSON, Chief Judge.

In this diversity action brought by Cathy A. Williams to recover damages for conversion arising out of an alleged wrongful repossession of an automobile, Williams appeals from a judgment notwithstanding the

* Paul Benson, Chief District Judge, District of North Dakota sitting by designation.

1. The Honorable Paul X Williams, Chief Judge, United States District Court for the Western District of Arkansas.

verdict [1] entered on motion of defendant Ford Motor Credit Company (FMCC). In the same case, FMCC appeals a directed verdict in favor of third party defendant S & S Recovery, Inc. (S & S) on FMCC's third party claim for indemnification. We affirm the judgment n. o. v. FMCC's appeal is thereby rendered moot.

In July, 1975, David Williams, husband of plaintiff Cathy Williams, purchased a Ford Mustang from an Oklahoma Ford dealer. Although David Williams executed the sales contract, security agreement, and loan papers, title to the car was in the name of both David and Cathy Williams. The car was financed through the Ford dealer, who in turn assigned the paper to FMCC. Cathy and David Williams were divorced in 1977. The divorce court granted Cathy title to the automobile and required David to continue to make payments to FMCC for eighteen months. David defaulted on the payments and signed a voluntary repossession authorization for FMCC. Cathy Williams was informed of the delinquency and responded that she was trying to get her former husband David to make the payments. There is no evidence of any agreement between her and FMCC. Pursuant to an agreement with FMCC, S & S was directed to repossess the automobile.

On December 1, 1977, at approximately 4:30 a. m., Cathy Williams was awakened by a noise outside her house trailer in Van Buren, Arkansas.[2] She saw that a wrecker truck with two men in it had hooked up to the Ford Mustang and started to tow it away. She went outside and hollered at them. The truck stopped. She then told them that the car was hers and asked them what they were doing. One of the men, later identified as Don Sappington, president of S & S Recovery, Inc., informed her that he was repossessing the vehicle on behalf of FMCC. Williams explained that she had been attempting to bring the past

2. Cathy Williams testified that the noise sounded like there was a car stuck in her yard.

due payments up to date and informed Sappington that the car contained personal items which did not even belong to her. Sappington got out of the truck, retrieved the items from the car, and handed them to her. Without further complaint from Williams, Sappington returned to the truck and drove off, car in tow. At trial, Williams testified that Sappington was polite throughout their encounter and did not make any threats toward her or do anything which caused her to fear any physical harm. The automobile had been parked in an unenclosed driveway which plaintiff shared with a neighbor. The neighbor was awakened by the wrecker backing into the driveway, but did not come out. After the wrecker drove off, Williams returned to her house trailer and called the police, reporting her car as stolen. Later, Williams commenced this action.

The case was tried to a jury which awarded her $5,000.00 in damages. FMCC moved for judgment notwithstanding the verdict, but the district court, on Williams' motion, ordered a nonsuit without prejudice to refile in state court. On FMCC's appeal, this court reversed and remanded with directions to the district court to rule on the motion for judgment notwithstanding the verdict.[3] The district court entered judgment notwithstanding the verdict for FMCC, and this appeal followed.

Article 9 of the Uniform Commercial Code (UCC), which Arkansas has adopted and codified as Ark.Stat.Ann. § 85–9–503 (Supp.1981), provides in pertinent part:

> Unless otherwise agreed, a secured party has on default the right to take possession of the collateral. In taking possession, a secured party may proceed without judicial process if this can be done without breach of the peace. . . .[4]

In *Ford Motor Credit Co. v. Herring*, 27 U.C.C.Rep. 1448, 267 Ark. 201, 589 S.W.2d 584, 586 (1979), which involved an alleged conversion arising out of a repossession, the Supreme Court of Arkansas cited Section 85–9–503 and referred to its previous holdings as follows:

> In pre-code cases, we have sustained a finding of conversion only where force, or threats of force, or risk of invoking violence, accompanied the repossession. *Manhattan Credit Co., Inc. v. Brewer*, 232 Ark. 976, 341 S.W.2d 765 (1961); *Kensinger Acceptance Corp. v. Davis*, 223 Ark. 942, 269 S.W.2d 792 (1954).

The thrust of Williams' argument on appeal is that the repossession was accomplished by the risk of invoking violence. The district judge who presided at the trial commented on her theory in his memorandum opinion:

> Mrs. Williams herself admitted that the men who repossessed her automobile were very polite and complied with her requests. The evidence does not reveal that they performed any act which was oppressive, threatening or tended to cause physical violence. Unlike the situation presented in *Manhattan Credit Co. v. Brewer, supra,* it was not shown that Mrs. Williams would have been forced to resort to physical violence to stop the men from leaving with her automobile.

In the pre-Code case *Manhattan Credit Co. v. Brewer*, 232 Ark. 976, 341 S.W.2d 765 (1961), the court held that a breach of peace occurred when the debtor and her husband confronted the creditor's agent during the act of repossession and clearly objected to the repossession, 341 S.W.2d at 767–68. In *Manhattan*, the court examined holdings of earlier cases in which repossessions were deemed to have been accomplished without any breach of the peace, *id.* In particular,

---

**3.** Opinion at 627 F.2d 158 (8th Cir. 1980).

**4.** It is generally considered that the objectives of this section are (1) to benefit creditors in permitting them to realize collateral without having to resort to judicial process; (2) to benefit debtors in general by making credit available at lower costs, *see Griffith v. Valley of the Sun Recovery and Adjustment Bureau, Inc.,* 29

U.C.C.Rep. 711, 126 Ariz. 227, 613 P.2d 1283 (Ct.App.1980); and (3) to support a public policy discouraging extrajudicial acts by citizens when those acts are fraught with the likelihood of resulting violence, *see Morris v. First Nat'l. Bank & Trust Co.,* 7 U.C.C.Rep. 131, 21 Ohio St.2d 25, 254 N.E.2d 683 (1970).

the Supreme Court of Arkansas discussed the case of *Rutledge v. Universal C.I.T. Credit Corp.*, 218 Ark. 510, 237 S.W.2d 469 (1951). In *Rutledge*, the court found no breach of the peace when the repossessor acquired keys to the automobile, confronted the debtor and his wife, informed them he was going to take the car, and immediately proceeded to do so. As the *Rutledge* court explained and the *Manhattan* court reiterated, a breach of the peace did not occur when the "Appellant [debtor-possessor] did not give his permission but he did not object." *Manhattan, supra*, 341 S.W.2d at 767–68; *Rutledge, supra*, 237 S.W.2d at 470.

We have read the transcript of the trial. There is no material dispute in the evidence, and the district court has correctly summarized it. Cathy Williams did not raise an objection to the taking, and the repossession was accomplished without any incident which might tend to provoke violence. *See also Teeter Motor Co., Inc. v. First Nat'l Bank*, 20 U.C.C.Rep. 1119, 260 Ark. 764, 543 S.W.2d 938 (1976).

Appellees deserve something less than commendation for the taking during the night time sleeping hours, but it is clear that viewing the facts in the light most favorable to Williams, the taking was a legal repossession under the laws of the State of Arkansas. The evidence does not support the verdict of the jury. FMCC is entitled to judgment notwithstanding the verdict.

The judgment notwithstanding the verdict is affirmed.

HEANEY, Circuit Judge, dissenting.

The only issue is whether the repossession of appellant's automobile constituted a breach of the peace by creating a "risk of invoking violence." *See Ford Motor Credit Co. v. Herring*, 267 Ark. 201, 589 S.W.2d 584, 586 (1979). The trial jury found that it did and awarded $5,000 for conversion. Because that determination was in my view a reasonable one, I dissent from the Court's decision to overturn it.

Cathy Williams was a single parent living with her two small children in a trailer home in Van Buren, Arkansas. On December 1, 1977, at approximately 4:30 a. m., she was awakened by noises in her driveway. She went into the night to investigate and discovered a wrecker and its crew in the process of towing away her car. According to the trial court, "she ran outside to stop them * * * but she made no *strenuous* protests to their actions." (Emphasis added.) In fact, the wrecker crew stepped between her and the car when she sought to retrieve personal items from inside it, although the men retrieved some of the items for her. The commotion created by the incident awakened neighbors in the vicinity.

Facing the wrecker crew in the dead of night, Cathy Williams did everything she could to stop them, short of introducing physical force to meet the presence of the crew. The confrontation did not result in violence only because Ms. Williams did not take such steps and was otherwise powerless to stop the crew.

The controlling law is the UCC, which authorizes self-help repossession only when such is done "without breach of the peace * * *." Ark.Stat.Ann. § 85–9–503 (Supp. 1981). The majority recognizes that one important policy consideration underlying this restriction is to discourage "extrajudicial acts by citizens when those acts are fraught with the likelihood of resulting violence." *Supra,* at 719. Despite this, the majority holds that no reasonable jury could find that the confrontation in Cathy Williams' driveway at 4:30 a. m. created a risk of violence. I cannot agree. At a minimum, the largely undisputed facts created a jury question. The jury found a breach of the peace and this Court has no sound, much less compelling, reason to overturn that determination.

Indeed, I would think that sound application of the self-help limitation might require a directed verdict in favor of Ms. Williams, but certainly not against her. If a "night raid" is conducted without detection and confrontation, then, of course, there could be no breach of the peace. But where the invasion is detected and a con-

frontation ensues, the repossessor should be under a duty to retreat and turn to judicial process. The alternative which the majority embraces is to allow a repossessor to proceed following confrontation unless and until violence results in fact. Such a rule invites tragic consequences which the law should seek to prevent, not to encourage. I would reverse the trial court and reinstate the jury's verdict.

Ernest Lee Wade, pro se.

Steve Clark, Atty. Gen., and Dennis Molock, Little Rock, Ark., for appellee.

Before HEANEY, HENLEY and McMILLIAN, Circuit Judges.

HENLEY, Circuit Judge.