Stephanie Ann JAMES and Roland James, Plaintiffs,

v.

FORD MOTOR CREDIT COMPANY, a foreign corporation, Special Agents Consultants, Inc., a Minnesota corporation, Robert Klave, an individual, Jane Doe and John Doe, individuals, Defendants.

Civ. No. 4–93–656.

United States District Court, D. Minnesota, Fourth Division.

Feb. 7, 1994.

Thomas J. Lyons, Lyons Sawicki & Neese, Richard Gregory Nadler, Nadler Law Office, St. Paul, MN, and Mary C. Ivory, Consumer Law Center, Maplewood, MN, for Stephanie Ann James and Roland James.

C. Blaine Harstad and Jonathan M. Redgrave, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, MN, for Ford Motor Credit Co.

Donna Dunkelberger Geck and Ann E. Betts, Arthur, Chapman, McDonough, Kettering & Smetak, and Daniel Scott McGrath, Flakne Law Office, Minneapolis, MN, for Special Agents Consultants, Inc. and Robert Klave.

## ORDER

DOTY, District Judge.

This matter is before the court on defendants' motion for dismissal for lack of subject matter jurisdiction. Based on a review of the file, record and proceedings herein, the court grants defendants' motion.

## BACKGROUND

Plaintiffs Stephanie and Roland James purchased a new Ford Escort from Tousley Ford on November 24, 1989. The purchase was financed through defendant Ford Motor Credit Company ("Ford"). Through Ford, plaintiffs also obtained a credit disability insurance policy, issued by Globe Life Insurance. Starting in March 1992, plaintiffs began falling behind in their monthly loan payments. Ford sent plaintiffs a notice of default and intent to repossess dated May 19, 1992. Stephanie James ("James") claims that on May 18, 1992, she was injured and subsequently unable to work for several months. She claims that she informed Ford and requested insurance claim forms.

On June 24, 1992, before any benefits were paid by Globe, Ford contacted James regarding the late payments. Ford informed her that the car would be repossessed if payment was not made. It is undisputed that James specifically told Ford that she did not want the car repossessed and that Ford could not take the car. On June 29, 1992, defendant

Robert Klave ("Klave"), an employee of defendant Special Agents Consultants ("Special Agents"), acting on behalf of Ford, removed plaintiffs' car from a parking lot. Klave reported by telephone to Ford that he had repossessed the car and received instructions to deliver it to Minneapolis AutoAuction. Approximately one hour later and several miles away from the parking lot, James saw Klave driving the car. She entered the car and an altercation ensued. Klave drove the car into a parking lot where the struggle continued inside the car, then outside the car and finally inside the car again. James gained control of the car and drove it home. Klave reported the incident to the police, accusing James of assault, theft and damage to property. Klave reported the car as stolen. Defendants contend that because Klave was in possession of the car for approximately one hour on June 29, 1992, that date serves as the date on which the car was repossessed.

On July 8, 1992, police officers observed the car being driven in Minneapolis. The car was stopped and the officers identified James as a passenger in the car. James was arrested on a complaint made by a Minneapolis Police Sergeant. Klave then repossessed the car. During discovery Special Agents produced at least three documents which specifically list July 8, 1992, as alternately "repo date," "date of repossession," or "date repossessed." Plaintiffs contend that this is the date of repossession.

Plaintiffs claim that the actions of defendants Klave and Special Agents violated the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. 1692–1692*o*. Plaintiffs further claim that Ford is liable for the actions of Klave and Special Agents who acted as its agents in repossessing the car. Neither party contends that Ford is itself directly subject to FDCPA because it does not collect debts owed to any party other than itself. *See* 15 U.S.C. § 1692a(6). Defendants claim that FDCPA also does not apply generally to Klave and Special Agents because, rather than being debt collectors, they are in the repossession business. Although defendants admit that through certain statutory exceptions repossession companies may be brought within the scope of FDCPA, they argue that under the facts of this case the statute does not apply to Klave and Special Agents. Accordingly, defendants contend that there is no federal statute conferring jurisdiction on this court to decide this matter. 28 U.S.C. § 1331. Furthermore, because Klave and Special Agents are residents of Minnesota, there is no complete diversity of citizenship which would confer jurisdiction on this court. 28 U.S.C. § 1332. Defendants argue that this court is therefore without any jurisdiction to decide this matter and move for dismissal under Rule 12 of the Federal Rules of Civil Procedure. Plaintiffs argue that Klave and Special Agents are within the statutory exceptions and therefore subject to FDCPA, thus conferring jurisdiction on this court.

Defendants further contend that even if they are subject to FDCPA, plaintiffs' claim is barred because it was brought after the one year period prescribed by FDCPA for the bringing of claims. Plaintiffs contend that their suit is timely. Plaintiffs have also moved for partial summary judgment on wrongful repossession.

## DISCUSSION

Generally, on a Rule 12 motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiffs, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Fusco v. Xerox Corp.,* 676 F.2d 332, 334 (8th Cir.1982), and the allegations in its complaint must be accepted as true. *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam); *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972) (per curiam); *Sixel v. Transp. Communications,* 708 F.Supp. 240, 242 (D.Minn.1989). In addition, the court must resolve any ambiguities concerning the sufficiency of the plaintiffs' claims in favor of the plaintiffs, *see e.g., Hughes,* 449 U.S. at 10, 101 S.Ct. at 176; *Cruz,* 405 U.S. at 322, 92 S.Ct. at 1081, and give them "the benefit of every reasonable inference" drawn from the "well-pleaded" facts and allegations in their complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn,* 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 1465–66 n. 6,

10 L.Ed.2d 678 (1963). Thus, the court may not dismiss the plaintiffs' claims "merely because the court doubts that the plaintiffs will be able to prove all of the necessary factual allegations." *Fusco*, 676 F.2d at 334. Rather, the "court may dismiss the plaintiff's complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

■ Because defendants raise issues which question the court's ability to exercise subject matter jurisdiction over this action, the court may look beyond the pleadings and examine affidavits and other documents in resolving the issues before it concerning subject matter jurisdiction. *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir.1990) (citation omitted). The court may weigh the evidence submitted in support of the Rule 12(b)(1) motion and use that evidence to evaluate the merits of the motion. The Eighth Circuit stated in *Osborn* that:

> [T]he ... court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, *no presumptive truthfulness attaches to the plaintiff's allegations*, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Id.* (footnote omitted from the original) (quoting *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)). Once the evidence is submitted, the court may "not simply rule that there is or is not enough evidence to have a trial on the issue." *Id.* (citation omitted). The court must decide whether it has jurisdiction. *Id.* "The only

exception is in instances when the jurisdictional issue is 'so bound up with the merits that a full trial on the merits may be necessary to resolve the issue.'" *Id.* (quoting *Crawford v. United States*, 796 F.2d 924, 929 (7th Cir.1986)). Accordingly, with the standards set forth at hand, the court will consider defendants' motion to dismiss.

**1. Fair Debt Collection Practices Act**

■ Plaintiffs bring this action alleging violations of FDCPA by defendants Klave and Special Agents acting as agents for defendant Ford. FDCPA specifically grants federal district courts subject matter jurisdiction over claims arising under the act. 15 U.S.C. § 1692k(d). If there is no subject matter jurisdiction conferred by FDCPA, this action must be dismissed because plaintiffs and defendants Klave and Special Agents are all Minnesota residents and therefore there is a lack of complete diversity of parties. 28 U.S.C. § 1332.

The FDCPA is Congress's response to what it saw as "the abusive, deceptive, and unfair debt collection practices [used] by many debt collectors." 15 U.S.C. 1692(a). The statute applies almost exclusively to those who collect debts owed to others. The statute defines "debt collector" as

> "any person who uses any instrumentality of interstate commerce or the mails in any business the principle purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another."

15 U.S.C. 1692a(6).[1]

■ In is undisputed that Ford is not subject to FDCPA with respect to its direct attempts to ensure that plaintiffs made payments which were overdue on the loan Ford had made to them. Automobile finance companies which make loans to automobile purchasers do not have as their principal business purpose the collection of debts and they do not generally collect debts due to others. *Kohler v. Ford Motor Credit Co.*, 112 Misc.2d 480, 447 N.Y.S.2d 215, 217 (Sup.Ct. Albany

---

**1.** The statutory definition of "debt collector" is limited by seven exceptions to the definition.

Repossession companies are not explicitly exempted.

Cty.1982), *modified on other grounds*, 93 A.D.2d 205, 462 N.Y.S.2d 297 (1983). As a general rule "actual creditors ... are not subject to the act." *Meads v. Citicorp Credit Services, Inc.*, 686 F.Supp. 330, 333 (S.D.Ga. 1988). There is an exception to the general rule when the actual creditor seeks to collect debts due it under an assumed name. *Id.* That exception is not applicable here.

 Courts have held that repossession companies, like actual creditors, are generally outside the scope of FDCPA. However, the statute does explicitly extend to repossession companies when they act in "the enforcement of security interests" of others. 15 U.S.C. §§ 1692a(6), 1692f(6). *Jordan v. Kent Recovery Services, Inc.*, 731 F.Supp. 652, 657 (D.Del.1990). Section 1692f(6) prohibits

> [t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest.

Plaintiffs claim that Klave and Special Agents violated this provision when the car was taken on June 29, 1992, and again on July 8, 1992, because the defendants' had no "present right of possession" of the car. Plaintiffs argue that Ford lost that right when plaintiffs revoked their implied consent to repossession.[2] Depriving Ford of the right to repossession in turn deprived Klave and Special Agents, as Ford's agents, of any present right to possession. Ford becomes liable for the actions of Klave and Special Agents because the duty to collect debts lawfully is non-delegable under Minnesota law. *See Nichols v. Metropolitan Bank*, 435 N.W.2d 637 (Minn.Ct.App.1988).

Plaintiffs do not deny that they were in default on their loan or that the loan contract authorizes repossession upon default. Rather, they contend that Ford did not have a present right to possession, asserting that under Minnesota law self-help repossession is a limited means of recourse for creditors and that defendants' actions violated that law. Self-help repossession is governed by Minnesota's version of the Uniform Commercial Code.

> Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial recourse if this can be done without breach of the peace ...

Minn.Stat. § 336.9–503 (Uniform Commercial Code § 9–503). Plaintiffs argue that under Minnesota case law a debtor can revoke any contractual consent to self-help repossession by giving notice to the creditor. They cite *Bloomquist v. First National Bank of Elk River*, 378 N.W.2d 81 (Minn.Ct.App.1985), *review denied* January 31, 1986, a case interpreting Minn.Stat. § 336.9–503, in support of this proposition.

In *Bloomquist* the debtor had specifically and repeatedly informed the vice president of the creditor bank that he would not consent to the repossession of certain tools he had used as collateral. The Minnesota Court of Appeals held that such statements "specifically revoked any implied right to ... repossession" in the contract. *Bloomquist*, 378 N.W.2d at 84. Thus, when the bank's agents broke into the debtor's garage and took his tools, they committed a breach of the peace, thereby violating the statute. *Id.* at 86. A breach of the peace occurred without any actual violence or any actual threat of violence.

---

2. Plaintiffs' memorandum in opposition to defendants' motion to dismiss initially asserted a second reason for denying defendants' motion to dismiss. The reason alleged was that a Ford representative had promised James that, if she made a payment, the car would not be repossessed. James stated in her affidavit that she made a payment by check on or about July 6, 1992, and attached what purported to be a photocopy of the canceled check. Plaintiffs argued that acceptance of a late payment by Ford re-

quired a renewed notice of intent to repossess. Plaintiffs' counsel notified the court by letter dated January 13, 1994, that James' statement in her affidavit was false and requested that the court strike reference to the statement. A new affidavit without reference to the check has been submitted by plaintiffs. The court therefore will not consider plaintiffs' argument based upon any promise made by Ford to forego repossession if a payment was made.

The *Bloomquist* court noted that "Minnesota has not specifically delineated a test to determine whether a breach of the peace has occurred." *Id.* at 84. The court therefore relied on case law from other jurisdictions enacting the Uniform Commercial Code in order to interpret Section 9–503. *Id.* at 84. The court adopted a two part test to "determin[e] whether a breach of the peace has occurred during a repossession of collateral: (1) whether there was entry by the creditor upon debtor's premises, and (2) whether the debtor or one acting in his behalf consented to the entry and repossession." *Id.* at 84 (citing *Quest v. Barnett Bank of Pensacola*, 397 So.2d 1020, 1023 (Fla.App.1981) (quoting White & Summers, *Uniform Commercial Code* 966 (1962))). This test implies that under certain circumstances there can be a breach of the peace by operation of law even if no actual breach of the peace occurred.

■ It is reasonably clear that Minnesota follows the majority view of U.C.C. § 9–503: when debtors specifically object to repossession, they revoke any implied right previously granted to the creditors to enter the debtor's property without consent. Entering the debtor's property after consent is revoked constitutes a breach of the peace. *Bloomquist*, 378 N.W.2d at 85. *See* White & Summers, 2 *Uniform Commercial Code* (3d ed. 1988) 576. The basis for favoring debtors over creditors in these circumstances appears to be "the law's historical ... aversion to trespass." *Id.* at 578. Creditors are not without recourse when a debtor revokes the implied right of repossession. But they must secure those rights through judicial means rather than through self-help repossession. *Id.* at 84, citing *Quest*, 397 So.2d at 1023.

In this case, however, defendants did not repossess the car from plaintiffs' property. On June 29, 1992, the car was removed from a public parking lot. On July 8, 1992, the car was repossessed from a public street.[3] The court has found no case which holds that repossession of an automobile from a public street in itself constitutes a breach of the peace. *See* White & Summers, 2 *Uniform Commercial Code* at 577. The Eighth Circuit did find, in applying Arkansas law regarding U.C.C. § 9–503, that taking a car from a driveway did not constitute a breach of the peace because the debtor did not object to the taking of the car and the repossession company did not provoke violence so as to breach the peace. *Williams v. Ford Motor Credit Co.*, 674 F.2d 717, 719–720 (8th Cir.1982). The Eighth Circuit relied on Arkansas case law holding that there is no breach of the peace even when the debtor does not consent to the repossession so long as the debtor does not object to the repossession while it is in process. *Id.* at 720 (citing *Manhattan Credit Co., Inc. v. Brewer*, 232 Ark. 976, 341 S.W.2d 765 (1961), *Rutledge v. Universal C.I.T. Credit Corp.*, 218 Ark. 510, 237 S.W.2d 469 (1951)). This difference between not consenting to repossession and actually objecting to repossession is perhaps too fine a distinction upon which to build a theory of the respective rights of debtors and creditors. In any event, it is clear here that plaintiffs did object to repossession and thus *Williams* provides little direct guidance in the present case.

Plaintiffs contend that the *Bloomquist* doctrine of the debtor's right to revoke implied consent to repossession should be construed broadly. They argue that this will not jeopardize creditors' rights because writs of replevin can be obtained from the courts. The basis for plaintiffs' position appears to be that judicial procedures will protect both debtors and creditors. Defendants contend that a broad application of the *Bloomquist* right to revoke consent would wreak havoc on creditors and repossession companies who have already secured certain rights in their contracts.

■ In considering the extent of the applicability of *Bloomquist*, the court notes that the Minnesota Court of Appeals deliber-

---

**3.** The circumstances of the repossession on July 8, 1992, are disputed. Plaintiffs allege that James was in a restaurant when she was arrested. Ford has submitted a copy of a police report indicating that Minneapolis police officers stopped the car while it was being driven and arrested James who was riding as a passenger in the car. Whichever account is correct, it remains undisputed that the repossession took place in a public place removed from the James' residence.

ately sought to bring Minnesota law into conformity with majority views on U.C.C. § 9–503. *Bloomquist* 378 N.W.2d at 84. A sound synopsis of the majority view is found in White & Summers, 2 *Uniform Commercial Code* (3d ed. 1988) 582.

> In the absence of consent, entry into a debtor's house is not permitted. For the most part courts ignore clauses purporting to authorize a repossession which results in a breach of the peace, and they will not usually permit a creditor to repossess in the face of unequivocal oral protests. Conversely courts do permit the repossession of cars from private driveways and public streets.

The court concludes that *Bloomquist* limits the doctrine of breach of the peace by operation of law to those attempts at self-help repossession where the creditor enters the debtor's private residence or business property in the face of the revocation of consent to repossession. Such a limitation would be consistent with the law's aversion to trespass. A debtor can limit a creditor's right of self-help repossession, but not absolutely.

The court finds that even if plaintiffs revoked their consent to repossession, that revocation applied only to defendants' right to enter plaintiffs' property. It was not an absolute revocation of the right to repossession. Plaintiffs may have denied defendants the right to enter their residence or garage to repossess the car, but Klave and Special Agents repossessed the car first from a parking lot and later from a public street. Thus, the limitations that *Bloomquist* places on self-help repossession do not apply to this case. Therefore, because plaintiffs' default made the car subject to repossession, defendants did not lose the present right of possession merely because James said she did not want the car taken away. Accordingly, the court finds that defendants are not brought within the scope of FDCPA simply because they repossessed they car over plaintiffs' objections.

■ Whether Klave and Special Agents violated the statute through a breach of the peace involving actual violence or the threat of violence is a separate question. It is evident that a breach of the peace occurred

on June 29, 1992. Defendants contend that the altercation cannot be considered a breach of the peace during the repossession, which would have violated the self-help repossession statute, because Klave was already in control of the car thereby making the repossession complete before he was attacked by James. Once a repossession agent has gained sufficient dominion over collateral to control it, the repossession has been completed. *Wallace v. Chrysler Credit Corp.*, 743 F.Supp. 1228, 1233 (W.D.Va.1990). There is no dispute that Klave was in control of the car for approximately one hour after he removed it from the parking lot. He drove the car away from the lot, informed Ford that he had the car and was proceeding to deliver it to a location specified by Ford when he was attacked by James. The court finds that, once Klave had control of the car the repossession was complete and James' protest was to no avail. It would be unjust to hold that the violence caused by James in a public place after the repossession was complete could somehow dispossess defendants of their present right to possession.

Therefore, the court finds that Klave's repossession of the car was properly executed under Minnesota law. Plaintiffs' revocation of the right to repossession did not extend so far as to prevent Ford from authorizing Klave to act on its behalf in removing the car from a parking lot. Acting as Ford's agent, Klave had a present right to possess the car. Therefore, his actions do not come within the scope of FDCPA. Accordingly, this court has no subject matter jurisdiction to consider the complaint and must dismiss the complaint.

## 2. Statute of Limitations

■ Defendants also argue that even if they are within the scope of FDCPA, plaintiffs' claim is barred by the one-year statute of limitations contained in the FDCPA. The language of the statute is clear. "An action to enforce any liability created by this subchapter may be brought ... within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Defendants contend that the repossession of the car took place on June 29, 1992, and that plaintiffs' suit is untimely because it was filed on July 7, 1993.

Plaintiffs contend that their suit is timely because the repossession of the car took place on July 8, 1993.

Plaintiffs have submitted as exhibits to their affidavits copies of documents produced by Special Agents during discovery. On three of those documents July 8, 1992, is listed as the date of repossession. It is uncontested that Klave attempted to repossess the car on June 29, 1992, but evidently abandoned the car when confronted by James. However, his complaint to the police makes it clear that he claimed to have repossessed the car on June 29, 1992. Although defendants claim that the repossession was complete on June 29, 1992, it is clear that they did not actually have possession of the car until July 8, 1992.

 The test for the completion of a repossession is whether the "creditor has gained sufficient dominion over his collateral." *Wallace*, 743 F.Supp. at 1233. It cannot be said that Ford exercised complete dominion over the car until July 8, 1992. Plaintiffs clearly had the car in their possession and control between June 29 and July 8, 1992. However, simply examining who had possession of the car is inadequate under these circumstances. Klave clearly controlled the car for approximately one hour on June 29, 1992. He reported the repossession and was proceeding according to the instruction he was given by Ford. James' assault on Klave resulted in his abandoning the car. The court is unwilling to say that a debtor who assaults a repossession agent in lawful possession of collateral can thereby regain legitimate control of the collateral. Klave may have had a number of reasons to abandon the car, not the least of which would be concerns for his personal safety and the protection of his personal property. That Klave did not simply acquiesce to James' demands for the return of the car is made clear by his filing his complaint with the police. Plaintiffs' possession of the car between June 29 and July 8, 1992, appears to have been unlawful. The fact that Klave filled out forms listing July 8, 1992, as the repossession date does not negate the fact that on June 29, 1992, he had completed the repossession of the car. References to July 8, 1992 on subsequent documents is easily explained as the natural way to date documents related to Klave's second and ultimately successful attempt to gain actual possession of the car.

Thus, the court finds that June 29, 1992, is properly considered to be the date of repossession of the car. Therefore, even if defendants are brought within the scope of FDCPA, plaintiffs' action is barred by the statute's unambiguous one year time limitation for the bringing of an action against defendants.

**3. Plaintiffs' Motion For Partial Summary Judgment**

Plaintiffs' response to defendants' motion included a counter motion for partial summary judgment on the issue of wrongful repossession. Local Rule 7.1(b)(1) requires that dispositive motions be noticed and memoranda in support of the motion filed at least 28 days prior to hearing. Plaintiffs' motion for partial summary judgment was made as part of their memorandum in response to defendants' motion to dismiss. This was filed nine days prior to the hearing. Thus, the motion is untimely and the court will not consider the merits of plaintiffs' motion at this time.

The question of plaintiffs' motion is, in any event, rendered moot by the court's finding that it does not have subject matter jurisdiction to hear this case.

## CONCLUSION

Defendants have moved for dismissal of the complaint because this court lacks subject matter jurisdiction. The complaint alleges violations of FDCPA by defendants in their repossession of plaintiffs' car. FDCPA provides the only basis for jurisdiction because the parties are not completely diverse. The court finds that defendants Klave and Special Agents did not violate Minnesota's self-help repossession law when Klave took the car from a public parking lot on June 29, 1992. Even if plaintiffs had attempted to revoke Ford's implied right of repossession, Klave did not breach the peace when he repossessed the car because he did not enter onto plaintiffs' property. Taking the car from a publicly accessible parking lot, Klave

gained sufficient dominion over the car to have completed the repossession. Whatever breach of the peace occurred subsequently was not part of the repossession itself. Thus, the court concludes that defendants actions constituted lawful repossession of the car at a time defendants had a present right of possession. Because there was no violation of FDCPA, the court concludes that it has no jurisdiction to hear this matter. Therefore, defendants' motion to dismiss should be granted.

Furthermore, even if defendants are within the scope of FDCPA, the complaint should be dismissed because it was untimely. Finally, plaintiffs' attempted countermotion for partial summary judgment was untimely and is rendered moot by the court's determination that it lacks jurisdiction.

Accordingly, **IT IS HEREBY ORDERED** that defendants' motion to dismiss for lack of subject matter jurisdiction is granted.

**FURTHER IT IS HEREBY ORDERED** that plaintiffs' motion for partial summary judgment is denied as untimely.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**