695 A.2d 294

MARIE A. DEMARY AND LOUIS DEMARY, HUSBAND AND WIFE, PLAINTIFFS–RESPONDENTS, v. ANNE E. RIEKER, WILLIAM F. RIEKER, INTERSTATE FINANCIAL ADJUSTERS, INC., DEFENDANTS, AND CHASE MANHATTAN SERVICES CORPORATION, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 29, 1997—Decided June 16, 1997.

Before Judges SHEBELL, BAIME and BRAITHWAITE.

*Kenneth J. Wilbur* argued the cause for appellant (*Shanley & Fisher, P.C.*, attorneys; *Mr. Wilbur*, on the brief).

*George J. Abdy* argued the cause for respondent, Marie A. DeMary (*Mr. Abdy*, on the joint brief).

*George C. Nardella* argued the cause for respondent, Louis DeMary (*Nardella & Nardella*, attorneys; *Mr. Nardella*, on the joint brief).

No brief filed on behalf of defendants, Anne E. Rieker, William F. Rieker and Interstate Financial Services, Inc.

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

Plaintiffs, Marie DeMary and Louis DeMary, instituted the within action for personal injuries they each suffered as a consequence of Chase Manhattan Services Corporation (Chase) ordering repossession of a leased Mercedes automobile. On September 4, 1991 at approximately 5:30 a.m., plaintiffs were awakened by their son, who told them that someone was taking their car. All three went outside, saw William Rieker (Rieker) attaching the Mercedes to a tow truck, and became very upset. Mrs. DeMary was standing on the passenger side of the truck, asking Rieker to allow her husband to remove his possessions from the car, when Rieker began to back out of the driveway. She had her hands on the truck and when Rieker took off, she held on. The truck accelerated to about twenty-five to thirty miles per hour and was driving "erratically, zigzagging," as she pleaded with him to stop. She said "[h]e came to a sudden jerk and for a second he jerked and then I just fell off." As the tow truck continued to drive away, the Mercedes, in tow, ran over Mrs. DeMary's left ankle, resulting in extensive and permanent injury.

Mr. DeMary testified that when he told Rieker to unhook the car, his voice was raised and the exchange of words was heated.

He told Rieker that he mailed the check and offered to let him use the phone to verify it. Rieker refused to determine whether a payment had been made. Mr. DeMary had been trying to get some things out of the car at the time his wife went over to the passenger side of the truck. When he realized his wife was hanging onto the side of the truck as it began moving, Mr. DeMary ran after it. During the course of the chase, he fell on the front lawn and broke his ankle.

Mrs. DeMary was taken by ambulance to St. Joseph's Hospital and was later transferred to Meadowlands Hospital, where she remained for approximately two weeks. There she had an operation where twenty-two screws were implanted in her ankle with some bone grafting. Mrs. DeMary had a second surgery in July 1992 to remove some screws and to add more bone to the ankle. The bone was taken from her hip on each occasion, and resulted in scarring in both areas. A third surgery was performed in March 1994 to remove all of the screws in her ankle. Mrs. DeMary received physical therapy each time after surgery, for approximately four to six months each time. Her orthopedic surgeon testified as to the procedures he used to treat her. He gave his prognosis:

> I'm very concerned about the prognosis for the ankle because of the possibility of post-traumatic arthritis. I think in all medical probability, I think this patient's looking at an ankle fusion in the future—

> . . . .

> That means making the foot and ankle unit one, to eliminate any pain. Certainly the patient's a relatively young woman so you would not want to do this in the near future, but in my experience that's probably what it will come to.

He also indicated that Mrs. DeMary would never again have full range of motion in her ankle and would have no range of motion if the ankle were fused.

Both Mr. and Mrs. DeMary testified that their marital relationship deteriorated because of the accident, resulting in their separation about two years before trial. Mrs. DeMary moved in with her mother at that time.

Mr. DeMary's broken ankle was placed in a cast for six weeks. At the time of trial, he complained of pain during bad weather. He has not been jogging since the accident, which was an activity he had done frequently. His doctor testified that Mr. DeMary had a "non-displaced fibial fracture." A short leg cast required the use of crutches for six weeks, and Mr. DeMary walked with a cane for a week after the cast was removed. The doctor opined that Mr. DeMary would have a partial permanent disability as a result of his injury, but did not quantify the extent of disability.

A company owned by Mr. DeMary leased the 1990 Mercedes from Chase and Mrs. DeMary was the guarantor of the lease. The company was responsible for the payments on the vehicle, but had been late making payments. In August 1991, Mr. DeMary spoke with someone from Chase regarding the late payments and promised that he would send a check before the end of the month. He assumed that since the Chase representative did not object, this was acceptable to them. Mr. DeMary testified that a check made out by his company was sent to Chase, however, he had no personal knowledge when the last check to Chase was written and mailed. He assumed it was mailed because his secretary told him it had been mailed. He also testified it was common practice to write checks from his own personal account rather than the company account.

His secretary testified that she had conversations with Chase "[a]ll the time." She added: "[t]hey had my office number and my personal home number." She always spoke with the same Chase employee and would straighten any payment problems out with him. She testified that Mr. DeMary's company was having financial difficulties, but that Chase was one of their priorities and she kept in touch with Chase to let them know when payments were coming. She recalled that in July 1991 she had a telephone conversation with a Chase representative regarding the late car payments and told Chase she was sending a payment then and two more payments would be sent in one to two weeks. She produced a copy of a letter showing that check number 422 for

$1,441.25 was sent to Chase on August 30, 1991 at P.O. Box 5210, New Hyde Park, New York, 11042. The check was drawn on Mr. DeMary's personal account, rather than a company account, and was cashed on September 9, 1991.

Chase's representative testified that the DeMary's account had been more than thirty days delinquent four times since the inception of the loan and that $105 in late fees had been assessed during that period. Chase's records indicated that Mr. DeMary's secretary called Chase on July 29, 1991 to advise that she had sent a single payment on July 26 and that she would be sending another payment on August 2. Chase received a payment on August 2, however, it did not bring the account current. On August 16, a letter was sent to Mr. DeMary's company regarding two payments that were in arrears. On August 29, Chase's record of DeMary's account history showed that the collection agent was gathering all of the paperwork and that repossession was being considered. On September 3, 1991, a Chase representative tried to contact the DeMary's at home, but the phone was not working, and Interstate was assigned to repossess the Mercedes.

Chase's agreement with Interstate was described by Chase's representative at trial as essentially the same as with any repossession company. Under the agreement, Chase could review the books and records of Interstate; stop the repossession at any time; require Interstate to maintain liability insurance with an insurance carrier that is satisfactory to Chase and to notify Chase of any material modification of any insurance policy; and require Interstate to obtain Chase's prior written consent before hiring any subcontractors. The Chase representative also testified that Chase was not in the business of repossessing vehicles; did not supply Interstate with tow trucks, personnel, or any other equipment necessary to effectuate the repossession; and did not pay the salaries of the tow truck operators or have the authority to hire or fire the operators. The Interstate tow truck did not display any Chase identification, and Rieker did not tell the

DeMary's that he was hired by Chase. Chase employees are forbidden from participating in an involuntary repossession.

The trial judges [1] were called upon to deal with several issues. The first was how to explain to the jury Interstate's lack of further participation in the case after jury selection. Judge Mochary indicated to the jury that

> the towing company Interstate and the two employees of that company are no longer in this case. They have been dismissed out by me. You are not to speculate as to why. All you have to know is that it was done by the Court.

Counsel for Chase requested that she be permitted to inform the jury in her opening that Interstate settled the case, but the judge refused her request.

Next, because the Repossession Agreement between Interstate and Chase contained, as noted, a clause requiring Interstate to obtain insurance that named Chase as an additional insured, a dispute arose as to whether the agreement should be redacted to exclude any evidence of insurance from the jury. The judge found it should be redacted to prevent the jury from knowing the amount of insurance, but refused to redact the entire insurance provision. Chase also requested that the agreement be redacted with regard to an indemnification provision. After hearing all of the testimony, Judge Harris decided that the indemnification provision could be viewed by the jury as evidence of Chase's control over Interstate.

Chase made a motion for judgment at the close of all of the evidence, asserting that no agency relationship between Chase and Interstate was proven; that if an agency relationship was proven, Rieker was acting outside the scope of his employment; that the repossession was not the proximate cause of the injury; and that the release of an agent or a finding of no fault on the part of the agent releases the master from liability.

---

[1] Judge Mochary presided on June 12, 13, 14, 15, and 16, 1995. Then, due to Judge Mochary's illness, Judge Harris presided on June 19, 20, 21, 22, and 23, 1995.

Judge Harris found that there was sufficient indicia of control to allow the jury to decide whether an agency relationship existed between Chase and Interstate, and that there was a sufficient nexus between the negligence alleged and plaintiffs' injuries to allow the jury to decide the issue. The judge reserved decision on whether the settlement was actually a release of Chase's agent requiring that Chase be released as well, but eventually denied relief to Chase.

The jury found Chase liable to Mrs. DeMary in the sum of $2,500,000 and to Mr. DeMary for $500,000. Neither received a *per quod* award. The jury found Chase to be eighty percent negligent and Interstate/Riekers to be twenty percent negligent.

Chase's motion for Judgment Notwithstanding the Verdict (JNOV) or, in the alternative, for a new trial, was denied. The indemnification action between Chase and Interstate was stayed by consent of the parties, and an order certifying the judgment as final was entered. Chase appeals from the judgments.

On appeal, Chase's first allegation is that Judge Mochary's instruction to the jury that Interstate and the Rieker's were "dismissed out by the Court" resulted in reversible error. *Rule* 2:10–2, provides:

> Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result, but the appellate court may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court.
>
> [*Ibid.*]

Here, the situation was brought to the attention of Judge Harris when he took over conduct of the trial. He did advise the jury that Interstate and the Riekers had settled with the plaintiffs. He instructed:

> When this action was started, the plaintiff alleged in the complaint that the joint or concurring negligence of William Rieker, Ann Rieker and Interstate Financial Adjustors, Incorporated was a proximate cause of the accident. Before the trial started Rieker and Interstate settled with the plaintiff in a sum of money, the amount of which is to be of no concern to you.
>
> Your first duty is to determine whether or not the defendants remaining were individually or concurrently negligent in proximately causing the accident. Judge

Mochary, in his preliminary instruction, one of his preliminary instructions to you, indicated that the settling defendants were dismissed out of the case and they are dismissed out in terms of the literal meaning of the word as far as your consideration as to ascribing liability to them. They are not in the case and they should not be part of your determination except as I am now indicating.

If you find that any one of the defendants or all of the defendants were guilty of negligence and that such negligence was a proximate cause of the accident, then it becomes your duty to determine the amount of damages you should award to the plaintiffs to compensate them fairly and reasonably for their injuries. In computing these damages, you must not be concerned with the number of defendants who were originally in the case, nor with the number of defendants remaining.

Judge Harris also indicated that counsel for Chase could refer to the settlement in her summation. Indeed, counsel for Chase emphasized Interstate's settlement with plaintiffs at least three times in her summation.

■ Considering Judge Harris' instruction and Chase's summation, Judge Mochary's preliminary instruction to the jury was not clearly capable of producing an unjust result. *R.* 2:10–2. The jury was instructed that Interstate/Riekers had settled with plaintiffs for a sum of money rather than having been dismissed by the court. Any error in the initial instruction by Judge Mochary was harmless and did not influence the result. We reject as without merit Chase's contention that Judge Mochary's explanation to the jury prejudiced its trial strategy, compelling its counsel to not focus on the egregiousness of Rieker's conduct.

Chase's assertion that Judge Harris improperly imposed a deadline for the jury's deliberations was not raised below and is unsupported by the record. We spurn the argument as clearly without merit. *R.* 2:11–3(e)(1)(E).

Chase also asserts that it was an abuse of discretion to allow the jury to consider evidence of insurance contained in the Repossession Agreement. Chase contends that even if the insurance provision was evidence of agency, it should have been excluded as too prejudicial. Chase also argues that the failure to give a limiting instruction as to the use of this evidence requires reversal.

*N.J.R.E.* 411 states

> Evidence that a person was or was not insured against liability is not admissible on the issue of that person's negligence or other wrongful conduct. Subject to Rule 403, this rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, control, bias, or prejudice of a witness.

Admission of such evidence of insurance for purposes other than to prove liability is subject to the discretion of the trial judge as to whether the prejudicial impact of the evidence outweighs its probative value. *N.J.R.E.* 403. However, "[i]f the evidence of liability insurance is admissible as bearing upon some issue other than negligence or culpable conduct, the jury should be charged in accordance with N.J.R.E. 105 as to the limited weight to be given to the evidence." Biunno, *Current N.J. Rules of Evidence,* comment on *N.J.R.E.* 411.

The insurance provision contained in the Repossession Agreement reads as follows:

> 1. At its sole cost and expense, the Repossessor will maintain as long as this Agreement is in effect, the following insurance coverage with an insurance carrier or carriers satisfactory to Chase: (a) Automobile Liability Insurance ..., naming Chase as additional insured; (b) Automobile Physical Damage Insurance ..., naming Chase as loss payee; (c) Automobile Collision Insurance ..., naming Chase as loss payee; (d) No Fault Insurance ...; (e) Comprehensive General Liability Insurance ..., naming Chase as additional insured.

All reference as to the amount of insurance was redacted.

■ Agency was considered an issue at trial, and the language contained in the Repossession Agreement was thought to be evidence of Chase's "control" over Interstate. However, the ability to contractually require another corporation to obtain insurance, and to be named as an additional insured or a loss payee does not, in our view, bear upon whether Chase and Interstate were in a master/servant relationship. Thus, the perceived probative value of this provision on the agency issue was erroneous.

■ The admission of this evidence was compounded by the fact that the judge did not limit the manner in which the jury could use this evidence of insurance. In deciding to admit the provision, Judge Mochary stated he would give a limiting instruction to the jury that "it is only to be considered ... as indication of or as a

possible element of control...." However, this instruction was inadvertently omitted when Judge Harris took over the trial, and neither counsel informed the judge of the omission.

Nonetheless, the failure to give a limiting instruction was harmless error, as was the admission of the agreement requiring insurance. As between insurance coverage and financial responsibility of a corporation the size of Chase, it is debatable which is the "target" defendant of the two. Clearly, the jury would perceive Chase as having the ability to pay regardless of any evidence of insurance. Standing alone, the insurance provision was not here clearly capable of producing an unjust result, even when combined with the failure to give a jury instruction limiting its use. *R.* 2:10–2.

We turn next to Chase's argument that the provision contained in the Repossession Agreement requiring Interstate to indemnify Chase should not have been made available to the jury and was prejudicial. The relevant portion of the Agreement reads as follows:

*INDEMNITIES*

1. *By Chase.* Chase shall have no liability to Repossessor in connection with the transactions contemplated by this Agreement, except Chase shall assume full responsibility for and save the Repossessor, its employees and agents, harmless from any and all claims arising solely in connection with the propriety of Chase's notice to the Repossessor to repossess any Vehicle.

2. *By Repossessor.* The Repossessor shall assume full responsibility for and save Chase, its employees and agents harmless from and against any and all claims, losses, damages, costs or suits arising in connection with the Repossessor's acts or omissions concerning the pick-up, repossession, transportation, storage or sale of any Vehicle or its contents or any breach of any representation, warranty or covenant in this Agreement.

Chase claims that this provision had little to do with the issue of its control over Interstate or Rieker, and that its probative value was outweighed by its prejudicial nature. *See N.J.R.E.* 403.

The judge admitted the evidence of indemnification as "a possible indicia of control." However, it is apparent that the indemnification provision is not an indicator of control. Clearly,

admission of this evidence was error. The prejudicial effect of this error will be discussed in the damages portion of this opinion.

Chase also claims that the judge should have instructed the jury that "it had to consider the relative fault of all parties, including the plaintiffs and both settling and non-settling defendants." Judge Harris made reference to the possible negligent conduct of Interstate and plaintiffs a number of times. We find no reason to disturb the jury verdict of no negligence on the part of plaintiffs. However, because the jury was asked to apportion fault between Chase and Interstate after the initial verdict, without further explanatory instruction, and because of the lack of sufficient instruction as to the legal standards governing the allegation of negligence against Chase, we have grave doubt as to the propriety of the jury's 80–20% apportionment of fault.

The jury was charged that plaintiffs contended Chase was negligent in ordering the repossession. However, only a general negligence charge was given to cover all allegations of negligence in this case. The jury was given no standard by which to judge whether plaintiffs had proven Chase was negligent in maintaining and reviewing its records prior to causing repossession. However, we see no reason to enter that thicket at this juncture. We leave it for the indemnification trial between Chase and Interstate, as we are convinced that Chase had a duty to ensure that repossession of the secured property was carried out in a peaceable manner, a duty which could not be delegated to an independent contractor or anyone else. Since the duty is non-delegable, a breach of the peace results in liability on the part of the secured party ordering repossession. Further, discussion of this duty will follow.

■ Thus, we need not rule upon Chase's contention that there was no probative evidence to support plaintiffs' claim that Interstate was in a master/servant relationship with Chase, although we tend to agree with its position. Under the doctrine of *respondeat superior*, a master is liable for the negligence of his/her servant that occurs during the scope of the servant's employment. *Abba-*

*mont v. Piscataway Tp. Bd. Educ.,* 138 *N.J.* 405, 416, 650 *A.*2d 958 (1994); *Printing Mart–Morristown v. Sharp Electronics Corp.,* 116 *N.J.* 739, 771, 563 *A.*2d 31 (1989); *Prosser and Keaton on Torts,* § 69, 499–501 (West 5th ed.1984). The jury was asked to determine whether Interstate was actually a servant of Chase and whether Interstate was an independent contractor. The jury answered "yes" to both questions, which although legally inconsistent, was most likely a function of the manner in which the jury interrogatories were worded. Also contributing to the inconsistency is the possibility that the jury found a non-delegable duty existed.

■ Regardless, we assume that the evidence does support Chase's assertion that Interstate was an independent contractor, and we agree that usually a hiring party is not liable for the negligence of an independent contractor. *Bahrle v. Exxon Corp.,* 145 *N.J.* 144, 156, 678 *A.*2d 225 (1996). However, one may not abdicate a non-delegable duty simply by entering into a relationship with an independent contractor. *Prosser, supra,* § 71, 511–12.

*N.J.S.A.* 12A:9–503 only authorizes repossession without judicial process where it is accomplished "without breach of the peace." As this case demonstrates, there is a distinct probability that an involuntary repossession may become a highly confrontational situation. Whenever a person is confiscating the property of another, particularly where the owner believes he/she is entitled to keep the property, the potential for dispute is likely, and injury to person or property is a foreseeable consequence.

■ New Jersey has never decided whether the duty to repossess without a breach of the peace is non-delegable. However, those jurisdictions that have considered the question do impose such a duty upon parties ordering independent contractors to repossess property. *See Clark v. Associates Commercial Corp.,* 877 *F.Supp.* 1439, 1445 (D.Kan.1994); *James v. Ford Motor Credit Co.,* 842 *F.Supp.* 1202 (D.Minn.1994); *King v. Citizens Bank of Warrensburg,* CIV.A. 88–2576–0, 1990 WL 154210, at *4 (D.Kan.

Sept. 19, 1990); *General Fin. Corp. v. Smith,* 505 *So.*2d 1045, 1048 (Ala.1987); *Nixon v. Halpin,* 620 *So.*2d 796, 798 (Fla.App.1993); *Sammons v. Broward Bank,* 599 *So.*2d 1018, 1021 (Fla.App.1992); *Massengill v. Indiana Nat'l Bank,* 550 *N.E.*2d 97, 99 (Ind.App. 1990); *Nichols v. Metropolitan Bank,* 435 *N.W.*2d 637, 640 (Minn. App.1989); *Robinson v. Citicorp. Nat'l Services,* 921 *S.W.*2d 52, 54–55 (Mo.App.1996); *Mauro v. General Motors Acceptance Corp.,* 164 *Misc.*2d 871, 626 *N.Y.S.*2d 374, 376–77 (Sup.Ct.1995); *MBank El Paso, N.A. v. Sanchez,* 836 *S.W.*2d 151, 153–54 (Tex. 1992). We adopt this rule, that an employer has a non-delegable duty to effectuate a repossession without a breach of the peace, as strongly in the public interest.

This theory was presented to the jury as follows:

An employer of an independent contractor will not—will be held liable if the work was of the kind which the employer should have recognized would during its progress necessarily create a danger of the mishap which occurred and thus contained or involved an unreasonable or peculiar risk of bodily harm to the plaintiff unless special precautions were taken.

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress particular risk of physical harm to other, unless special precautions are taken, is subject to the liability for physical harm caused to them by the failure of the independent contractor to exercise reasonable care to take such precautions even though the employer has provided for such precautions and the contractor otherwise.

If you make a finding of fact that the repossession of plaintiff's vehicle authorized by Chase was likely to create, during its progress a particular risk of harm to others unless special precautions are taken, that is discontinuing the repossession, it cannot be—if it cannot be completed without a breach of the peace or notifying the police to accompany them to plaintiff's home, then you may consider whether Chase is liable for the physical harm caused to the plaintiffs by failure of Interstate to exercise reasonable care to take such precautions.

A secured party such as Chase on default has the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action.

■ We are willing to assume Chase had a valid security agreement under which repossession was permissible and that the lease was in default. We also assume that Chase and Interstate intended repossession to be effectuated without a breach of the peace. However, we are satisfied the jury properly found that a breach of the peace occurred. The jury was instructed as to this

issue and there was ample evidence presented to support a finding of a breach of the peace. As Chase had a non-delegable duty to ensure the repossession was carried out without any breach of the peace, we uphold the liability verdict against Chase. We, however, set aside the apportionment verdict and remand that issue for determination during the indemnification trial between Chase and Interstate.

We now turn to the final issue of whether a new trial should have been ordered because of the excessiveness of the jury awards in favor of each of the plaintiffs. We first note that because the jury made no award to the plaintiffs for any *per quod* losses, the awards of 2.5 million dollars and five hundred thousand dollars to Mrs. DeMary and Mr. DeMary, respectively, represent compensation only for the personal injuries each suffered resulting from their separate accidents.

We look first at Mr. DeMary's award of a half a million dollars for a simple non-displaced tibial fracture resulting in six weeks of casting and what can be considered at best, some minor permanent disability. Although Judge Mochary was of the opinion that it was not a result which would shock the judicial conscience, we must disagree with that conclusion. The award bears no reasonable relationship to the injury and the need to compensate Mr. DeMary for his losses. There were no medical expenses or out-of-pocket losses such as lost income or future medical expenses to be considered. After six weeks of casting, during which he ambulated with crutches, he used a cane for approximately one week. The only problem he related was that it hurt "like a toothache" in bad weather and that he is unable to jog today as he used to do before the accident.

Turning to Mrs. DeMary's injury and the award of 2.5 million dollars, we note the gravity of the injury, which includes a significant loss of both flexion and extension in the ankle joint, without apparent impairment in lateral movement. In reviewing the propriety of the verdict, we also assume that the jury found credible the testimony of Mrs. DeMary's orthopedist that a fusion

of the ankle because of arthritic changes was likely in the future. Certainly the treatment that had taken place prior to trial, involving three surgeries with bone grafts, insertion and removal of screws, and scarring in both the hip and ankle areas, is significant and impressive. We also recognize her complaints of pain when she wakes up in the morning, swelling when she is on the ankle too long, stiffness, and the need to take Advil for relief of the pain.

Nonetheless, even considering the significance of Mrs. De-Mary's injuries, the award of 2.5 million dollars is suspect when viewed in the light of Mr. DeMary's clearly excessive verdict, counsels' inflammatory comments, and certain trial error. Remarks made by both plaintiffs' counsel in their summations included references to a "faceless defendant" and Chase as a "weasel." Also a theme in both summations was the notion that Chase was an insulated corporation who should not be allowed to "get away with" what they did to plaintiffs.

We conclude that the jury awards were as a result of prejudice resulting from counsels' inflammatory remarks directed against the "giant" Chase. While we sustain the liability award against Chase based upon a non-delegable duty, we must reverse the damage award. We also have considered that the jury had before it the Repossession Agreement which purported to hold Interstate and Rieker ultimately responsible for such offensive conduct and disregard for human safety. This may have given the jury the impression that in returning a large verdict against Chase, it was also punishing Interstate and Rieker. In any event, only awards which are fair and reasonable should be sustained regardless of the ability of a defendant to pay the freight. *See Caldwell v. Haynes*, 136 *N.J.* 422, 442, 643 *A.2d* 564 (1994); *Baxter v. Fairmont Food Co.*, 74 *N.J.* 588, 596–97, 379 *A.2d* 225 (1977).

We add that we have reviewed both trial judges' comments in their rulings on the motion for a new trial as to damages and we find nothing which demonstrates a "feel of the case" sufficient to sustain the verdicts. The observations regarding the credibility of the plaintiffs, and their understating of their injuries, is fully

accepted by us. Nonetheless, it does not detract from our conclusion that the verdicts should not stand because they represent a miscarriage of justice under the law.

We are satisfied that a new trial as to damages only is the best method of evaluating the fair compensation to be awarded to plaintiffs for the injuries they have suffered. The removal of inflammatory rhetoric and dispersions cast toward the corporate defendant will permit the jury to fully and fairly evaluate the damages.

We affirm as to Chase's liability, set aside the apportionment of fault as between the defendants, reverse as to the damage awards, and remand for a retrial as to damages. The issue of apportionment may be resolved in the trial on the indemnification issue, if necessary.

Affirmed in part, reversed in part, and remanded for further proceedings.