Joseph GOLDSTEIN,
Plaintiff/Counter–
Defendant

v.

CHRYSLER FINANCIAL COMPANY, LLC, Defendant/Counter–
Plaintiff,

and

LASSETTER & ASSOCIATES, INC., Defendant

No. 02–73109.

United States District Court,
E.D. Michigan,
Southern Division.

July 30, 2003.

Joseph Goldstein, Montgomery, PA, pro se.

George J. A. Heitmanis, Troy, MI, George M. DeGrood, III, Thomas, De-Grood, Southfield, MI, for Defendant.

### *OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

FRIEDMAN, District Judge.

### I.  Introduction

Pursuant to local rule 7.1(e)(2) the court shall decide the defendants' motion for summary judgment without oral arguments.

Joseph Goldstein, an adult individual incarcerated at Allenwood Federal Prison Camp, is the Plaintiff and Counter–Defendant. Defendant and Counter–Plaintiff, Daimler Chrysler Services North America LLC, formerly Chrysler Financial Company, LCC ("DCS") finances and purchases automobiles from Chrysler Motor Co. Sales Operations. Lassetter and Associates, Inc. ("LAI"), the Defendant, is a skip tracing firm.

DCS filed its motion for Summary Judgment in a timely manner. LAI also filed in a timely manner. The plaintiff filed an answer on December 5, 2002.

Plaintiff claims a violation of 15 U.S.C. § 1692, including acceleration of debt obligation without notice or right to cure, neglecting to make direct contact regarding failure to make payments, and contacting him in a letter enclosed with "sexually explicit personal photos" in an effort to cause him difficulty in prison.

### II.  Facts

Summary judgment is appropriate when the court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In making its determination, the court "must consider all the facts in the light most favorable to the nonmovant and must give the nonmovant the benefit of every reasonable inference." *American Council of Certified Podiatric Physicians and Surgeons v. American Board of Podiatric Surgery, Inc.*, 185 F.3d 606, 619 (6th Cir.1999). In opposing a motion for summary judgment, the nonmoving party must set forth sufficient specific evidence such that a reasonably jury could return a verdict in its favor. *See Mount v. United States Postal Serv.*, 79 F.3d 531, 533 (6th Cir.1996).

The following summary of the relevant facts is presented in a light most favorable to the plaintiff. The Plaintiff leased a new 2001 Dodge Stratus automobile from Contemporary CPD, Inc. McIntyre Dep. 1. The Plaintiff financed $17,416 with monthly payments of $320.46. McIntyre Dep. 1. The first payment was due on or before August 25, 2001. McIntyre Dep. 1. On August 13, 2001 a man claiming to be the Plaintiff's father called Chrysler Financial and advised them his son had been arrested and he was sending in his son's car payment. McIntyre Dep. 1. The Plaintiff's father called Chrysler Financial on October 11, 2001 saying he was unable to make the two payments due on his son's vehicle, but that his son wanted him to continue to pay. McIntyre Dep. 1–2. On October 17, 2001 the Plaintiff's father said he did not speak to his son, and refused to pay for an automobile he did not have. McIntyre Dep. 2.

The Plaintiffs's vehicle had been impounded upon his arrest, but released to Kimberly Reiner who said that the Plaintiff's father had someone pick-up the vehicle from her. McIntyre Dep. 2. Special Agent David Sykes of the United States Secret Service confirmed that the Secret Service did not have the Plaintiff's vehicle in their possession. McIntyre Dep. 2.

At the time of purchase, the Plaintiff presented an insurance binder issued by the Allstate Indemnity Company indicating that automobile insurance was secured for the vehicle on July 10, 2001. McIntyre Dep. 2. The insurance policy was cancelled by Allstate for nonpayment on August 29, 2001. McIntyre Dep. 2. The Retail Installment Contract required the Plaintiff to acquire and maintain insurance. The Contract states, "You must insure yourself and us against loss or damage to the Vehicle and provide us proof of that insurance." Dfts' Exh. 6. After the cancellation of the policy on August 29, 2001, the Plaintiff had no insurance on the vehicle. McIntyre Dep. 2.

Chrysler Financial discovered the Plaintiff was arrested by the New Ipswich, New Hampshire police department. McIntyre Dep. 2. During this period, Chrysler Financial noticed an informational discrepancy in the materials the Plaintiff provided to them. First, the Plaintiff claimed to be originally licensed in Arizona. McIntyre Dep. 2. However, credit reporting agencies found no prior Arizona address. McIntyre Dep. 2. Also, the couple of payments received on the vehicle were all untimely. McIntyre Dep. 2. Finally, the vehicle had been impounded by a law enforcement agency and released to an individual other than the Plaintiff. McIntyre Dep. 2.

The Retail Installment Contract defines a default if:

> you do not make a payment when it is due; you file a bankruptcy petition or one is filed against you; your Vehicle is seized by any law enforcement official, encumbered, abandoned or lost, stolen or destroyed and such loss, theft or destruction is not covered by insurance; you do not maintain the Vehicle insurance required, by this contract; you seel, rent, lease or transfer any interest in the Vehicle without our permission.

Dfts' Exh. 6. Each of these incidents constitute a default under the Retail Installment Contract. McIntyre Dep. 2. Upon Plaintiff's default, under the Retail Installment Contract, Chrysler Financial had a right to repossess the vehicle. McIntyre Dep. 3.

Chrysler first hired Blue Moon Detective Agency to locate and repossess the Plaintiff's vehicle, however when Blue Moon could not find the vehicle, Chrysler hired Lassetter & Associates, a skip-tracing firm, to locate the vehicle. McIntyre Dep. 3.

LAI contacted family members before locating Plaintiff at Allenwood Federal Prison Camp. LAI attempted to contact the Plaintiff in jail by sending a letter. Their letter contained items that the prison sent back because prisoners were not allowed to have them. The jail sent these rejected items back with a form that had boxes to indicate why the materials were rejected. The boxes checked on the form to LAI indicated the communication contained stamps or stamped items and sexually explicit personal photos. Dfts' Exh. A. However, the prison verifies that the checked box next to sexually explicit personal photos was a typographical error due to the fact that the same form is used each time contents of a letter to a prisoner are returned to the sender, and the previous rejection letter was sent because it contained sexually explicit personal photos. Dfts' Exh. A. The letter from the warden of the prison states that there was a "typographical error" that "was not discovered until after distribution." Dfts' Exh. A. J Shannon, an Inmate Systems Office, confirms this in her memorandum in which she states, "No sexually explicit photos had been sent in for inmate Joseph Goldstein from Lassetter & Associates." Dfts' Exh. A.

A letter sent from LAI to Plaintiff dated May 20, 2002 states that they represent Chrysler concerning the Dodge Stratus, which had been charged off as bad debt. Pltf's Exh. 1. The letter states, "Please contact me via mail so that we may settle this matter in a timely and professional manner. Failure to do so leave[s] me but one option and that is to recommend to my client that we take this to a higher level." Pltf's Exh. 1.

### III. Analysis

The Plaintiff relies on 15 U.S.C. § 1692(b), (c) and (d) to support his claim that Chrysler Financial's employees and agents violated the statute by accelerating his debt obligation without issuing a notice of default or giving him a right to cure; failing to make direct contact with him concerning the deficiency of the loan and instead contacted his family members in a "disparaging and defamatory manner" while attempting to extort payment from them; and when they did contact him directly, LAI sent sexually explicit personal photos to get him into trouble with the prison. Pltf's Complaint.

■ However, 15 U.S.C. § 1692 a(6) defines a debt collector as:

any person who uses any instrumentality of interstate commerce or the mails in any business the principle purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . For the purpose of section 1692 f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

LAI is a skip tracing firm hired to locate property, in this case the car. McIntyre Dep. 3. Therefore it does not fall within the definition of debt collector set forth by 15 U.S.C. § 1692 a(6). Their principle purpose is not to collect debts, nor do they regularly collect or attempt to collect debts owed due to them or others. The Plaintiff offers no evidence to show that Lassetter & Associates' course of business falls within the definition of "debt collector," therefore 15 U.S.C. § 1692 does not apply to Lassetter.

■ Additionally, DCS is not a debt collector. DCS is a finance company that collects only its own debts. In *James v. Ford Motor Credit Co.,* 842 F.Supp. 1202, 1204 (D.Minn.1994), the Plaintiffs purchased a new car and financed it through

Defendant, Ford Motor Credit. The Plaintiffs fell behind in their payments and Ford sent a notice of default and intent to repossess. *Id.* at 1204. Robert Klave, acting on behalf of Ford, removed the plaintiffs car from a parking lot. *Id.* at 1204. One of the plaintiffs saw him driving the car, entered the car, and an altercation ensued in which the Plaintiff gained control of the car and drove it home. *Id.* at 1205. The Plaintiffs claimed that Klave's actions violate 15 U.S.C. § 1692. The court held that it was, "Undisputed that Ford is not subject to FDCPA [Federal Debt Collection Practices Act] with respect to its direct attempts to ensure that plaintiffs made payments which were overdue on the loan Ford had made to them. Automobile finance companies which make loans to automobile purchasers do not have as their principal business purpose the collection of debts and they do not generally collect debts due to others." *Id.* at 1207. Therefore, the Fair Debt Collection Practices Act does not apply to DCS.

The claims Plaintiff makes: acceleration of debt, failure to provide notice or right to cure, failure to directly contact him, attempting to extort family members and contacting them in a disparaging and defamatory manner, as well as attempting to cause the Plaintiff problems in prison by sending explicit photographs may be valid claims under the Fair Debt Collection Act. However, neither defendant falls under the definition of "debt collector" articulated in the Act.

Since neither LAI nor DCS constitute debt collectors under the Fair Debt Collection Practices Act, they can not violate the act. Hence, summary judgment should be granted.

### IV. Conclusion

Accordingly,

IT IS ORDERED that the defendants' motion for summary judgment is granted